# Illinois Official Reports

## Appellate Court

*Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957

| | |
|---|---|
| Appellate Court Caption | CAPSTONE FINANCIAL ADVISORS, INC., Plaintiff-Appellant, v. KEITH PLYWACZYNSKI, MARINER WEALTH ADVISORS LLC, and MARINER WEALTH ADVISORS LLC–CHICAGO, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-15-0957 |
| Filed | December 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-CH-1589; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ross I. Molho, of Clingen, Callow & McLean, LLC, of Wheaton, and Kenneth J. Vanko, of Clingen, Callow & McLean, LLC, of Lisle, for appellant.<br><br>Peter E. Cooper and John S. Monical, both of Lawrence, Kamin, Saunders & Uhlenhop, LLC, of Chicago, and Sharron Ash, of Hamburger Law Firm, of Englewood, New Jersey, for appellees. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Zenoff and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1     Keith Plywaczynski is a certified financial planner (CFP) who provides investment advice to businesses and high-net-worth individuals. He was formerly employed by Capstone Financial Advisors, Inc. (Capstone), an investment advisory firm. He resigned from Capstone and went to work for a competitor, Mariner Wealth Advisors LLC and Mariner Wealth Advisors LLC–Chicago (collectively, Mariner). Afterward, Capstone quickly filed suit alleging that defendants–Plywaczynski, with Mariner's "active assistance"–jointly breached a restrictive covenant agreement Plywaczynski had with Capstone. The suit is currently pending in the trial court and, as an adjunct to the suit, Capstone moved for a temporary restraining order (TRO) against Plywaczynski and Mariner. The trial court denied the TRO motion, finding that Capstone was unlikely to succeed on the merits of its breach-of-contract claims. Capstone then appealed to this court. We have jurisdiction under Illinois Supreme Court Rule 307(d) (eff. Feb. 26, 2010) to provide a "quick review" of the grant or denial of injunctive relief, nothing more. *Harper v. Missouri Pacific R.R. Co.*, 264 Ill. App. 3d 238, 244 (1994). After conducting our review, we affirm.

¶ 2     The facts pertinent to our resolution of the TRO motion are essentially undisputed. Plywaczynski began working at Capstone in 2004. In 2008, in consideration of Plywaczynski's continued employment and a one-time $1,000 payment, he signed a "Confidentiality and Restrictive Covenant Agreement" with Capstone. Relevant here, the agreement included (1) a confidentiality, or nondisclosure, provision, (2) a two-year nonsolicitation provision, and (3) a two-year noncompete provision. At some point, Plywaczynski became Capstone's lead financial adviser and, in 2010, became a partner. When he became a partner, Plywaczynski also executed a shareholder's agreement, which we briefly address below.

¶ 3     On September 4, 2015, the Friday before Labor Day weekend, Plywaczynski was the last person in Capstone's offices at the end of the day. He called J. Frank Verkamp, Capstone's managing partner; he resigned and said that he was leaving for Mariner. Capstone's TRO motion notes that it has a "comprehensive client database" and that, by the end of the following week, Capstone had lost or was "delinked" on 41 client accounts, all formerly serviced by Plywaczynski.

¶ 4     Capstone quickly filed suit and sought a TRO based on Plywaczynski's alleged violation of each of the three provisions in the restrictive covenant agreement. Defendants filed a joint response, which included an affidavit from Plywaczynski. In it, he generally denied taking any of Capstone's protected client information. He averred that he "retained, partially in [his] head, and partially from handwritten notes" the contact information of the clients he reached out to. Plywaczynski also stated that the restrictive covenant prevented him from soliciting Capstone's clients, but not from contacting them. In fact, Plywaczynski asserted, he had an obligation under the professional standards applicable to CFPs to "timely disclose" to his clients "any material changes" to both his contact information and his employer's contact information. See CFP Board, *RULES OF CONDUCT* Rule 2.2, http://www.cfp.net /for-cfp-professionals/professional-standards-enforcement/standards-of-professional-conduct/ rules-of-conduct#2. According to Plywaczynski, he phoned his clients; he spoke to some and left voicemail messages for others. When he got through, however, he read from a script and provided them with his updated contact information at Mariner. If the client asked about going

with him to Mariner, he provided information on how to do so. If the client asked about staying at Capstone, then he gave that information instead.

¶ 5 With respect to the noncompete provision, Plywaczynski's affidavit does not specifically address whether he is rendering investment advisory services, but defendants' response to the TRO motion asserts that the noncompete provision is against public policy and unenforceable.

¶ 6 The parties proceeded to a hearing on Capstone's TRO motion before the trial court. The hearing focused almost entirely on Capstone's allegations concerning the nonsolicitation provision and the nondisclosure provision; the noncompete provision was hardly mentioned at all. Following the hearing, the trial court found that Capstone had failed to show a likelihood of success on the merits of its three breach of contract claims. Furthermore, the court observed for the limited purpose of the TRO motion that, by negative implication, the agreement's bar on solicitation appeared to permit Plywaczynski's contacting his clients. The court also stated that, again for the limited purposes of the TRO motion, "it is more likely than not that the public policy of Illinois requires the fiduciary CFP to give [his clients] that [updated] contact information, which does not constitute solicitation." Capstone appeals.

¶ 7 As the party seeking the injunction, Capstone must demonstrate that there is a "fair question" as to each of the following: (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. (Internal quotation marks omitted.) *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). Initially, we note that the parties dispute our standard of review. Capstone argues that it is *de novo* while defendants maintain that we should review the trial court's ruling under the abuse-of-discretion standard. They are both right. Because this case implicates the terms of the restrictive covenant, we review the trial court's ruling on the covenant's enforceability *de novo* and we review its ultimate determination on the request for injunctive relief for an abuse of discretion. *Id.* at 62-63. While we can imagine similar scenarios where these two standards might be in tension, we need not address the issue as the result under either standard would be the same here. *The Venture–Newberg-Perini, Stone & Webster v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728, ¶ 14.

¶ 8 We first address Capstone's arguments concerning what is before us. Capstone claims that, because the trial court's oral pronouncement focused only on the nonsolicitation and nondisclosure provisions, the trial court failed to consider the noncompete provision entirely or how the "critical operative language" in the noncompete provision affected the other two provisions. We disagree. Naturally, we consider both the oral judgment and the written ruling together, and we must choose between them if and only if they are in conflict. *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008). Here, the court's written order indicates that it found no likelihood of success on the merits of *all three* of Capstone's breach claims. Although the court's oral ruling drove home the point that it had rejected two of the claims at issue, we cannot say that the oral ruling mentioning only those two claims is in any way in tension with the written order disposing of all three.

¶ 9 Next, we address what is not before us–namely, Plywaczynski's shareholder's agreement, upon which Capstone relies. That agreement required Plywaczynski to sign a noncompete agreement at some future time. The parties have not provided us with any supplemental agreement in connection with the shareholder's agreement, however, and we confine our analysis to that which is of record.

¶ 10       Turning to the merits, we agree with the trial court that, for the limited purpose of the TRO motion, Capstone failed to show a likelihood of success on its breach claims. We make this determination on different grounds than the trial court, however. See *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) (the decision to grant or deny injunctive relief may be affirmed on any basis called for in the record). A TRO is an extraordinary remedy and the party seeking it must meet the high burden of demonstrating, through well-pled facts, that it is entitled to the relief sought. *McMann v. Pucinski*, 218 Ill. App. 3d 101, 108 (1991). Along those lines, to be considered "well-pleaded," a party's factual allegations must be supported by allegations of *specific* facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 11       After examining Capstone's TRO motion, which incorporated its complaint, we are hard pressed to say that it contains a single well-pled factual allegation that supports granting injunctive relief. All of the allegations are conclusory, inexplicably lacking in specifics. For example, Capstone says that after his resignation, "[i]n the course of just a few days, Plywaczynski managed to solicit and convert forty one Capstone accounts to Mariner." Capstone also says that, "[g]iven the speed with which Plywaczynski moved to solicit his former Capstone accounts, it would be naïve to think he did so without a Capstone client list." Finally, Capstone says that nearly $1 million in yearly commissions "walked out the door"; that its clients generally "remain with the company for many years"; and that Mariner is "inducing" Plywaczynski to breach his agreement. But how does any of this show, with *any* specificity, that either Plywaczynski or Mariner used Capstone's protected client information, or solicited its customers, to whom Plywaczynski either rendered or is currently rendering investment advice? That Capstone never says. And, despite having made this same allegation essentially 41 times, Capstone fails to identify a single client whose confidential information has been used, a single client whom Plywaczynski solicited (as opposed to merely contacted), or a single client to whom Plywaczynski rendered investment advice. We emphasize that the standard for injunctive relief is far too high for a court to rely solely on the moving party's innuendo. See *In re Marriage of Slomka*, 397 Ill. App. 3d 137, 144 (2009) ("allegations of mere opinion, conclusion, or belief are not sufficient to show a need for injunctive relief"); *cf.*, *e.g.*, *Mid-States Vending Service, Inc. v. Rosen*, 77 Ill. App. 2d 83, 88 (1966) (mere assumption that former employee " 'must' " be in possession of a customer list is insufficient to warrant injunction).

¶ 12       The deficiencies we have identified in Capstone's TRO motion simply are not cured by the additional evidence it has attached to the motion. The affidavits of Capstone principals Verkamp and Troy Bute merely reiterate the vague claims made in the motion itself. Capstone also included as exhibits two emails sent to Plywaczynski's Capstone account that refer to Mariner. But both emails, dated after Plywaczynski had resigned from Capstone, involve follow-ups with clients for paperwork with Mariner; neither contains Plywaczynski's side of the conversation or, without more, resembles anything that could reasonably be thought of as a client solicitation. See Black's Law Dictionary 1427 (8th ed. 2004) ("solicitation" defined as "[a]n attempt or effort to gain business"); *cf. Tomei v. Tomei*, 235 Ill. App. 3d 166, 170 (1992) (not every client contact qualifies as a prohibited solicitation).

¶ 13       Thus far, this case appears to stand in sharp contrast to two examples we have found. In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F. Supp. 2d 764 (E.D. Mich. 1999), four stockbrokers left Merrill Lynch on the Friday before Labor Day to join a competitor.

According to Merrill's TRO motion and exhibits, the brokers then "spent the holiday weekend using confidential client information, which they absconded with, to carry out an orchestrated and pre-planned solicitation [(by direct mail and by telephone)] of more than 2,800 former clients they serviced while at Merrill *** in violation of their employment agreements." *Id.* at 767. Of course, the district court granted Merrill a TRO and, eventually, a preliminary injunction. *Id.* at 772, 781. Less extreme, but equally clear cut, is *Scheffel Financial Services, Inc. v. Heil*, 2014 IL App (5th) 130600. There, Heil was also a financial advisor who resigned from his firm on the Friday before Labor Day. *Id.* ¶ 6. According to Scheffel's injunction motion and exhibits, Heil "overnight-mailed a solicitation package to [his] former clients *** inviting them to bring their business to him at [his new employer]. He admittedly did this on Friday in hopes of averting any attempt by Scheffel to stop him with a temporary restraining order from soliciting Scheffel's clients." *Id.* The circuit court issued an injunction, which the appellate court affirmed. *Id.* ¶¶ 1, 22.

¶ 14    Whatever these cases might indicate about the Friday before Labor Day and financial professionals, we find that they stand for the proposition that Capstone must have alleged more–not necessarily as much as in *Merrill Lynch* and *Scheffel*, but certainly more than has been alleged thus far–in order to be entitled to a TRO. Absent a concrete factual assertion that Plywaczynski used confidential information, engaged in client solicitation, or rendered or is rendering financial advice to a former Capstone client, Capstone cannot make out a *prima facie* case for any of the four elements to warrant injunctive relief. *Cf.*, *e.g.*, *Mid-States Vending*, 77 Ill. App. 2d at 89-90 ("A temporary injunction will not issue unless the evidence shows that defendant is doing or threatens to do something contrary to law and prejudicial to plaintiff. Here the evidence is wholly lacking as to solicitation of customers by defendant, and, therefore, there could be no showing of illegal, unjustifiable or injurious solicitation of plaintiff's customers.").

¶ 15    One final point. Defendants argue that Capstone forfeited its attempt to obtain a TRO to enforce the noncompete provision. As defendants point out, Capstone mentions the noncompete provision repeatedly in its Rule 307(d) petition to this court, yet it mentioned the noncompete provision only twice, and indirectly at that, in its TRO motion in the trial court. Defendants overlook that Capstone's attorney also mentioned the noncompete provision once at the hearing on the TRO motion, but their point is well taken. That said, the issue was sufficiently before the trial court for us to affirm the order denying the TRO on the merits in connection with the noncompete provision; therefore, we need not rely on forfeiture.

¶ 16    We hasten to add that nothing we have said should be construed as an opinion, express or implied, on the merits of Capstone's complaint, the legitimacy of its business interests (*Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 17), or the validity of any future request it may present for injunctive relief. We determine only that the trial court correctly interpreted the agreement at this early stage, and did not abuse its discretion when it denied Capstone's TRO motion as it stands, nothing more.

¶ 17    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 18    Affirmed.