2016 IL App (1st) 160042

THIRD DIVISION
February 17, 2016

No. 1-16-0042

| | | |
|---|---|---|
| BRIDGEVIEW BANK GROUP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 CH 17786 |
| | ) | |
| THOMAS MEYER, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Thomas R. Allen |
| | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justice Lavin and Justice Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff-appellant, Bridgeview Bank Group appeals from an order denying its motion for

a temporary restraining order against its former employee, defendant-appellee Thomas Meyer.

After a hearing on Bridgeview's motion, the circuit court denied relief based primarily on its

finding that Bridgeview failed to establish a likelihood of success on the merits. Finding no

abuse of discretion, we affirm.

¶ 2    Meyer was employed as a senior vice president at Bridgeview from April 2013 until he

was terminated on July 28, 2015. Meyer's duties primarily focused on originating, assigning or

selling Small Business Administration (SBA) loans. Meyer entered into an employment

agreement with Bridgeview that contained, among other provisions, a restrictive covenant that

prohibited Meyer from competing with Bridgeview in the area of SBA lending for six months

following termination of his employment. The agreement also contained provisions requiring Meyer to (i) maintain the confidentiality of Bridgeview's information, broadly defined to include virtually all nonpublic information relating to Bridgeview's business, (ii) refrain, for a period of one year, from soliciting Bridgeview's customers or encouraging those customers not to do business with Bridgeview and (iii) refrain for the same period of time from soliciting Bridgeview's employees to leave the bank. In connection with the termination of his employment, Meyer entered into a severance agreement. The severance agreement eliminated the six-month noncompete provision of Meyer's employment agreement, but required Meyer to maintain the confidentiality of Bridgeview's information, again broadly defined, and left intact the nonsolicitation provisions. The severance agreement also provided that Meyer would not make any disparaging comments about Bridgeview following his termination. On September 1, 2015, Meyer began working for CenTrust Bank.

¶ 3    On December 8, 2015, more than four months after Meyer's termination, Bridgeview commenced this action alleging that Meyer had violated the provisions of both the severance agreement and his employment agreement. Bridgeview asserted claims for breach of contract, breach of fiduciary duty, tortious interference with business relationships and under the Illinois Trade Secrets Act (765 ILCS 1065/2(b) (West 2014)). In its verified complaint, Bridgeview alleged that "in the course of reviewing its files," it discovered that Meyer had "contacted customers of [Bridgeview], divulged confidential information, and made disparaging remarks about" Bridgeview.  Bridgeview's complaint alleged that Meyer had interfered with "one or more of the contractual or prospective contractual relationships that [Bridgeview] has with its customers and prospective customers" and that Meyer's conduct had "caused and will continue to cause irreparable harm to [Bridgeview] by damaging its contractual and prospective contractual

relationships with its employees and customers; harming its goodwill, [and] disclosing its trade secret, confidential, and proprietary business information." No particular customer, confidential information, or disparaging comment was identified in the complaint.

¶ 4    After its complaint was filed, Bridgeview waited two weeks, until December 23, 2015, to file its motion for a temporary restraining order. Bridgeview's motion provided no more detail than its complaint regarding the identity of any customer allegedly solicited by Meyer or the nature of any confidential information disclosed by him. Bridgeview attached certain e-mails sent by Meyer to himself on the last day of his employment, but did not file any affidavit attesting to the source of the e-mails, revealing when Bridgeview discovered them or describing the information Meyer attached to them. Further, Bridgeview did not notice its motion as an emergency, but waited to present the motion on the circuit court's regular motion call on January 4, 2016.

¶ 5    On December 21, 2015, Meyer filed a verified counterclaim alleging that Bridgeview had breached the severance agreement by failing to pay Meyer certain earned commissions on loans generated prior to his termination, but which closed after he left. Meyer's counterclaim also contained allegations regarding his relationship with Paul Manzano, identified by Bridgeview in a presuit letter as a customer Meyer solicited. Meyer claimed his relationship with Manzano preceded his employment with Bridgeview and that he did not solicit Manzano following his termination. Meyer did not file an answer to Bridgeview's complaint.

¶ 6    At the initial hearing on Bridgeview's motion for a temporary restraining order, Bridgeview provided the court with copies of the e-mails and their attachments. Two e-mails attached, respectively, the SBA division's June 2015 income statement and a number of passwords, including internal bank passwords for Wi-Fi and Meyer's employee payroll account

as well as passwords for certain websites for which Meyer registered under his Bridgeview e-mail account. The third e-mail attached a list of contacts compiled by Meyer consisting of personal (family members, relatives and friends), Bridgeview personnel and third-party business contacts. The list was 176 pages long with 2,197 contacts. With respect to outside business contacts, the list contained brief notes about how Meyer knew the contact and, in some cases, current and prospective deals the contacts wished to pursue. The court expressed concern about the "customer list," observing that it did not appear that Meyer had any right to retain that information. The hearing was continued until January 8 and the court encouraged the parties to attempt to settle the matter.

¶ 7    Between the hearing on January 4 and the resumed hearing, the parties engaged in settlement discussions. One topic of discussion was the customer list and other information Meyer had e-mailed himself. Meyer's counsel offered to have Meyer delete the information on the contact list relating to Bridgeview customers. Although the parties did not settle, Meyer's counsel later represented that Meyer had deleted the emails and any Bridgeview customer information from his computer and that his counsel had retained copies of the e-mails and attachments pending the outcome of the litigation. At the resumed hearing on January 8, Bridgeview criticized Meyer's conduct, labeling it an effort to destroy relevant evidence.

¶ 8    The court heard extensive argument during the hearing on January 8. The court inquired of counsel for Bridgeview as to how many of the entries on the contact list were Bridgeview customers. Of the nearly 3,000 contacts, counsel for Bridgeview variously represented that "dozens," "scores" and "over a hundred" were Bridgeview customers. (Apparently, included in that estimate was contact information for Bridgeview's own employees.) Counsel for Meyer argued that Bridgeview had not provided any information, either in its complaint or in the

materials submitted in support of its request for a temporary restraining order, as to the nature and length of Bridgeview's relationship with any of the customers on the list, what resources had been invested to develop and retain those relationships or what Meyer's role in those relationships was. Meyer's counsel also faulted Bridgeview for failing to provide the court with information regarding how the customer list was compiled, what Bridgeview employees had access to it and what steps Bridgeview took to maintain its confidentiality.

¶ 9      Ultimately, the court concluded that "this case needs some evidence because there's a lot of inference, innuendo, [and] guesswork." Bridgeview's motion for a temporary restraining order was denied and the court set the matter for an evidentiary hearing on Bridgeview's motion for a preliminary injunction. Bridgeview timely filed this interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (eff. Feb. 26, 2010).

¶ 10     A trial court's decision to grant or deny injunctive relief is discretionary and its determination will not be disturbed absent an abuse of discretion. *Mohanty v. St. John Heart Clinic, S.C.,* 225 Ill. 2d 52, 62-63 (2006). We are concerned here not with the enforceability, *per se,* of the restrictions on Meyer's postemployment conduct,[1] but with the sufficiency of the allegations of Bridgeview's verified complaint to establish its entitlement to temporary injunctive relief on the assumption that the postemployment restrictions are valid.

¶ 11     On this topic, we note that in response to Bridgeview's verified complaint, Meyer did not file a verified answer, but instead purported to controvert Bridgeview's allegations in his verified counterclaim and affidavits submitted in opposition to the motion. For example, although

---

[1] Meyer indicated his intent to raise that issue via a motion to dismiss, but nevertheless the parties debated whether Meyer's length of employment could support the restrictive covenants. See *Fifield v. Premier Dealer Services, Inc.,* 2013 IL App (1st) 120327, ¶ 19 (generally at-will employment for two years or more sufficient to support postemployment restrictive covenant). Although the trial court resolved this latter factual issue against Meyer, we do not reach it for reasons we discuss below. *Infra* ¶ 13.

Bridgeview's complaint alleged that Meyer entered into the restrictive covenant at the outset of his employment in April 2013, Meyer disputed that assertion and claimed in an affidavit that he did not sign an agreement containing the restrictive covenant until August 2013. Meyer also asserted that Manzano, the one customer alluded to by Bridgeview (although not in its complaint), was a long time referral source known to him prior his employment at Bridgeview. This is procedurally improper. On a motion for a temporary restraining order, it has long been held that in the absence of a verified answer, the court should not receive or consider evidence or affidavits from the opposing party. *Russell v. Howe,* 293 Ill. App. 3d 293, 296 (1997); *Carriage Way Apartments v. Pojman,* 172 Ill. App. 3d 827, 836 (1988); *Kurle v. Evangelical Hospital Ass'n*, 89 Ill. App. 3d 45, 48 (1980). Bridgeview complained to the trial court that this maneuver allowed Meyer to indirectly contest the allegations of the complaint without filing a verified answer. We agree and thus will not consider evidence or arguments presented by Meyer regarding the date he executed his employment agreement, his alleged preexisting relationship with Manzano, his postemployment dealings with Manzano or Bridgeview's claimed breach of the severance agreement, as these matters are all beyond the allegations of the verified complaint.

¶ 12    The elements an applicant must establish to warrant the extraordinary remedy of a temporary restraining order are well-established. As variously stated, the movant must demonstrate (i) an ascertainable right in need of protection, (ii) a likelihood of success on the merits, (iii) irreparable harm in the absence of injunctive relief, and (iv) the lack of an adequate remedy at law. *Mohanty*, 225 Ill. 2d at 62 (citing *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164 (2002), and *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001)). In addition, if the movant establishes a *prima facie* case, the court

may also consider whether the balance of harms favors the grant or denial of injunctive relief. *Lumbermen's Mutual Casualty Co. v. Sykes,* 384 Ill. App. 3d 207, 230 (2008).

¶ 13    Here, in its oral ruling denying Bridgeview's motion, the trial court focused on Bridgeview's failure to demonstrate a likelihood of success on the merits based largely on the evidence presented regarding the sole customer identified by the bank prior to filing its complaint—Manzano—and Meyer's allegations regarding Bridgeview's claimed breach of the severance agreement. As we have noted, these were factual matters improperly raised by Meyer in opposition to the bank's motion and while the trial court will have the opportunity to resolve these and other issues in connection with the preliminary injunction hearing, they should not have been considered on Bridgeview's motion for a temporary restraining order. But because we may affirm on any basis appearing in the record (*Alpha School Bus Co. Inc. v. Wagner*, 391 Ill. App. 3d 722, 734 (2009)) we will instead examine the allegations of Bridgeview's verified complaint and attachments together with the parties' legal arguments to determine whether the court properly exercised its discretion in denying a temporary restraining order.

¶ 14    At the outset, we note that there are virtually no well-pled facts in Bridgeview's complaint regarding information Meyer allegedly took with him or customers he solicited after he left. Rather, the complaint is replete with nonspecific and conclusory allegations. For example, Bridgeview alleged that it had developed "unique marketing strategies, processes and information" without ever describing, even generally, the nature of those strategies, processes or information or what made them "unique" in the banking industry. Further, as defined in Meyer's employment and severance agreements, "confidential information" encompassed virtually the entirety of Bridgeview's business operations. Customer relationships were "initiated, created, cultivated, nurtured and solidified at great expense" to Bridgeview and from this broad, factually

unsupported allegation, Bridgeview drew the conclusion that those relationships were "legitimate business interests worthy of protection." Although the complaint alleged that "Meyer's breach of his post-employment obligations [was] open, blatant, and without justification," not a single fact supporting the conclusion that Meyer breached either his employment or severance agreement was alleged. Instead, Bridgeview claimed that Meyer solicited "one or more" of its customers, "used and disclosed" its confidential information and made disparaging comments about Bridgeview "in the course of so doing."

¶ 15    Such broad, conclusory allegations are insufficient to establish a plaintiff's entitlement to temporary injunctive relief.  See *Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶ 11 (plaintiff's failure to identify single client whom defendant solicited, or whose confidential information defendant used, fatal to motion for temporary restraining order); *Office Electronics, Inc. v. Adell*, 228 Ill. App. 3d 814, 820 (1992) (conclusory allegations regarding plaintiff's irreparable injury and lack of adequate legal remedy do not support issuance of preliminary injunction); *Schlicksup Drug Co. v. Schlicksup*, 129 Ill. App. 2d 181, 188 (1970) (finding allegation that defendant's conduct had and "will continue to cause irreparable injury to the plaintiff for which plaintiff has no adequate remedy at law" was a conclusion and not an allegation of fact (internal quotation marks omitted)). Months after it terminated Meyer, Bridgeview should have been able to identify specific customers it had lost and with which Meyer interacted during his tenure, if there were any. While, without the benefit of discovery, Bridgeview certainly could not be expected to prove the relationship between the lost business and Meyer's claimed breach of contract, Bridgeview's failure to identify in its complaint even one customer or describe with any specificity the confidential information used or disclosed is

inexplicable and, hence, insufficient. We consider next whether the additional materials submitted by Bridgeview to the trial court satisfied its burden.

¶ 16    As noted, at the hearing on Bridgeview's motion, it presented the trial court with emails and attachments it claimed contained confidential information and that Meyer had sent to himself on the last day of his employment. Yet, these materials were nowhere referenced in Bridgeview's complaint and Bridgeview failed to supply any affidavits in support of its motion in an attempt to flesh out the complaint's nonspecific allegations. While a party seeking a temporary restraining order may properly support its request with affidavits containing details of the complaint's broader allegations, *e.g.*, which customers the bank believed Meyer solicited and how the bank cultivated its SBA customer base, simply handing up documents at a hearing cannot satisfy the movant's burden. For example, Bridgeview's counsel tendered to the trial judge a copy of the contacts list "highlighted" to indicate which of the nearly 3,000 contacts were Bridgeview customers, but Bridgeview never produced an affidavit from a bank officer to attest to that representation. Consequently, these materials amounted to unverified allegations of wrongdoing on Meyer's part and the trial court could properly have refused to consider them. Nonetheless, since Meyer responded to this information, we will analyze it as well.

¶ 17    The primary focus of the trial court's analysis and Bridgeview's arguments on appeal concern the so-called customer list. Bridgeview did not argue that the other information attached to the e-mails, some of which was internal to the bank, was "used or disclosed" by Meyer in violation of the confidentiality provisions of his employment and severance agreements. Further, because (i) the bank had the ability to change its own passwords or otherwise disable Meyer's access to its internal accounts, (ii) Meyer's username and password for third-party websites was not confidential information belonging to Bridgeview, and (iii) by January 2016, the data in a

June 2015 income statement for the SBA division would undeniably have become stale, it does not appear that Meyer's continued possession of that information posed any threat of irreparable harm so as to warrant a temporary restraining order.

¶ 18     As to the list of contacts, Meyer conceded that it contained, in part, information regarding bank customers compiled during his employment. But, as Meyer argued to the trial court and contends on appeal, Bridgeview never alleged any facts to support its claim that those customer relationships were "initiated, created, cultivated, nurtured and solidified at great expense" or described how the brief notations in the contact list could be used by Meyer to Bridgeview's detriment. In this context, it is important to note that the severance agreement specifically waived the six-month noncompete provision in Meyer's employment agreement. Thus, when he was terminated, Meyer was free to compete with Bridgeview in the SBA lending industry. We have examined the unredacted list that we allowed to be filed under seal. With respect to business contacts, it contains such notations as who those individuals were referred by and, in some instances, generic descriptions of transactions they were interested in pursuing. Typical of these entries are: "he called me about a business on 5/30/13 that does medical oxygen sales price about $2.2mm and cash flow of $750.0m"; "he has two guys starting up a body shop and buying the real estate"; and "owns an Applebees and need a debt refinance." Many of the entries are undated and none contain any details of transactions that could be used by a competitor.  Thus, while certain information on the list may be "confidential" in the sense that it was unknown outside the bank, Bridgeview made no preliminary showing that the information was of any particular value to Meyer or his current employer.

¶ 19     Bridgeview also made no showing that it had a protectable interest in its SBA customer base. Other than a newsletter describing its "loyal" customers, Bridgeview provided no evidence

as to the resources devoted to acquiring and retaining customers or the longevity of their relationships with the bank. And while, under appropriate circumstances, a customer list can qualify as a trade secret, there is no *per se* rule affording it such status. Compare *Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580, 589 (1995) (describing "laborious method" by which customer list was compiled); *Elmer Miller, Inc. v. Landis*, 253 Ill. App. 3d 129, 134 (1993) (list of over 500 active, repeat customers for custom tailoring deemed a trade secret), with *System Development Services, Inc. v. Haarmann,* 389 Ill. App. 3d 561, 572 (2009) (customer list not protectable where employer failed to establish that names, addresses and contact information was not generally known by others or otherwise readily available); *Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 279 (2005) (finding that although customer list would have required significant time, effort and expense to duplicate, it was not a trade secret due to lack of efforts to restrict access to the information).

¶ 20    Moreover, the only claimed violation of the confidentiality agreement cited by Bridgeview concerned Meyer's communications with Manzano that occurred in the past. Because injunctive relief is forward-looking, it "'cannot remedy misconduct, such as the improper acquisition of trade secrets, that occurred in the past.'" *Liebert*, 357 Ill. App. 3d at 284 (quoting *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 467 (Md. 2004)). Bridgeview did not provide the trial court with any indication that the threat of Meyer's use or disclosure of confidential information was ongoing. While Bridgeview may yet develop such evidence that may be presented at the preliminary injunction hearing, its absence on this record supports the denial of the extraordinary remedy of a temporary restraining order.

¶ 21    Meyer also argued to the trial court and asserts on appeal that Bridgeview's delay in seeking a temporary restraining order bears on the availability of that remedy. Noticeably absent

from the materials presented to the trial court was any representation as to when Bridgeview discovered the e-mails that play such a prominent role in its claims. Because the bank obtained those e-mails from its internal e-mail system after Meyer was terminated, it is reasonable to assume they were available since the late summer of 2015. Bridgeview has never claimed otherwise. Meyer did not attempt to conceal his e-mails or cover his tracks (see *Liebert*, 357 Ill. App. 3d at 272-73 (former employee downloaded large volume of confidential information and later attempted to delete information and erase computer hard drive)) and Bridgeview has not claimed it was thwarted in its efforts to discover his conduct. If, as Bridgeview now contends, Meyer's possession of the contact list, standing alone, is an obvious breach of his confidentiality agreement, we can conceive of no reason why Bridgeview would take such a leisurely approach to protecting that information. While we do not agree that Bridgeview's delay, standing alone, warranted denial of a temporary restraining order, we agree with Meyer that it was a relevant consideration. *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 43 ("[D]elay is only one among several factors to be considered in the issuance of a preliminary injunction."); *Schlicksup Drug Co.,* 129 Ill. App. 2d at 187-88 (plaintiff's delay in seeking injunction "raises a question as to the need for the preliminary injunction").

¶ 22    Our supreme court has disavowed the paramount importance of any one factor in the context of a restrictive covenant. *Reliable Fire Equipment Co. v. Arredondo,* 2011 IL 111871, ¶ 33. But all of the foregoing factors are among those a court may consider in evaluating the enforceability of such covenants and, in particular, whether a former employee's violation warrants entry of an injunction. See *Northwest Podiatry Center, Ltd. v. Ochwat,* 2013 IL App (1st) 120458, ¶¶ 39, 46; *Gastroenterology Consultants of the North Shore, S.C. v. Meiselman*, 2013 IL App (1st) 123692, ¶ 10.

¶ 23    Given the paucity of facts alleged by Bridgeview in its complaint, the same failing in its motion for a temporary restraining order and the debatable status of the information in Meyer's possession, the trial court correctly found that Bridgeview had failed to establish a likelihood of success on the merits sufficient to support a temporary restraining order. This same lack of specificity, coupled with the lack of any claim that the violation is ongoing and the delay in seeking relief, renders Bridgeview unable to demonstrate that it will sustain irreparable harm in the absence of a temporary restraining order. As these elements are essential to the award of a temporary restraining order, the order denying Bridgeview's motion must be affirmed.

¶ 24    For the foregoing reasons, we affirm the order denying Bridgeview's motion for a temporary restraining order.

¶ 25    Affirmed.