2024 IL App (1st) 232464-U

SECOND DIVISION
June 11, 2024

No. 1-23-2464

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| STEPHEN HAMMER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 23 CH 09451 |
| | ) | |
| CITY OF BLUE ISLAND and FOREST VIEW MOBILE HOME PARK, INC., | ) | |
| | ) | |
| | ) | |
| Defendants-Appellants. | ) | Honorable |
| | ) | Joel Chupack, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the judgment of the circuit court. The circuit court did not abuse its discretion when it entered a preliminary injunction preventing a shutoff of water service to a mobile home park.

¶ 2    After filing a complaint for both damages and injunctive relief, plaintiff Stephen Hammer asked the circuit court to enter a preliminary injunction that prohibited the City of Blue Island from shutting off the water service at the Forest View Mobile Home Park. The mobile home park

had previously failed to pay its water bill for more than two years, to the extent that the park owed the City more than $800,000. Plaintiff is an innocent renter who has timely paid his rent to the mobile home park, and his lease provides that the park will pay for his water service. If preliminary injunctive relief was not granted, the City intended to shut off the water to the entire mobile home park until the park paid its water bill in full. After a hearing where the trial court heard arguments and took evidence from the parties, the court granted preliminary injunctive relief to plaintiff and enjoined the City from shutting off the water to the mobile home park. The City of Blue Island now appeals against the issuance of preliminary injunctive relief. For the following reasons, we affirm.

¶ 3                                         BACKGROUND

¶ 4      The facts in this appeal are relatively straightforward and mostly uncontested. Plaintiff Stephen Hammer is a disabled individual who owns a mobile home which, at the time he filed his original complaint in this case, he shared with his two minor children and their mother. Under a lease agreement with defendant Forest View Mobile Home Park, plaintiff pays monthly rent to Forest View for the right to use his mobile home as his residence in the park. The lease agreement provides that Forest View, as plaintiff's landlord, is responsible for paying certain utilities including water and sewer services.

¶ 5      On November 1, 2023, defendant the City of Blue Island made a decision to terminate water services to Forest View Mobile Home Park. Forest View had a delinquent water account with the City for $858,447. The City has a single water main set up for the entirety of the mobile home park, so if it shuts off the water flowing to the park, all the residents will be without running water. The City has an ordinance that provides how delinquent water accounts will be handled. Under the ordinance, the City can declare a water bill delinquent and give notice to

disconnect water services if a water bill remains unpaid more than ten days. The City informed Forest View and its lessees that, due to its delinquent water bill, the park's water services would be shut off on November 20, 2023.

¶ 6    Shortly after learning about the planned discontinuation of his water service, plaintiff filed a *pro se* complaint against defendants along with an emergency motion for a temporary restraining order. Plaintiff sought to enjoin the City from disconnecting the water service at the mobile home park.

¶ 7    At the time for presentment of plaintiff's emergency motion, counsel appeared in court and sought leave to represent plaintiff, which the court allowed. Plaintiff's counsel and counsel for both defendants consulted and drafted an agreed order which set a briefing schedule on the motion for a temporary restraining order, required Forest View to promptly pay $425,000 of the outstanding water bill, which Forest View paid, and prohibited Blue Island from disconnecting the water service until the motion for injunctive relief could be heard. Plaintiff's counsel subsequently amended his complaint and reframed plaintiff's emergency motion for a temporary restraining order as a motion for a preliminary injunction.

¶ 8    Following a hearing, the trial court granted plaintiff a preliminary injunction that prevented the City of Blue Island from disconnecting the water service to Forest View Mobile Home Park. The trial court explained that the status quo in this case was the continuation of water service to plaintiff. The trial court found that the statutes and ordinances plaintiff relied upon for his entitlement to continued water service demonstrated that plaintiff has a clearly ascertainable right in need of protection. The trial court also found that plaintiff was subject to irreparable harm if the preliminary injunctive relief was not granted because it was a risk to plaintiff's health and safety to not have water service to his home.

¶ 9    The trial court found that there was no adequate remedy at law for plaintiff because plaintiff did not have an available administrative remedy and his home would become functionally uninhabitable without water service. The trial court found that plaintiff raised a fair question about the violation of his constitutional rights should his water be shut off, so he had established a likelihood of success on the merits under the prevailing standard. The trial court further found that, in balancing the harms that either side would face from an unfavorable decision regarding the preliminary relief, the harm plaintiff would face outweighed any harm to the City. In balancing the equities, the trial court partially faulted the City for its role in letting Forest View's delinquent account reach $850,000 and waiting two years into delinquency before taking this action. The trial court explained that the residents of the park, such as plaintiff, lost certain remedies by being blindsided by the huge delinquency and then by being faced with the prospect of losing their water service within 20 days. The City of Blue Island now appeals, arguing that the preliminary injunction was granted in error.

¶ 10                                   ANALYSIS

¶ 11    The City of Blue Island argues that the trial court erred when it granted a preliminary injunction to plaintiff that prevents the City from disconnecting plaintiff's water service until plaintiff's claims in this case can be adjudicated on the merits.

¶ 12    A preliminary injunction does not determine the parties' ultimate rights or obligations, but rather preserves the status quo until a case can be decided on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Railway Co.*, 195 Ill. 2d 356, 365 (2001). To be entitled to a preliminary injunction, the moving party must demonstrate: (1) a clear, ascertainable right in need of protection; (2) irreparable injury in the absence of the relief sought; (3) no adequate remedy at law; and (4) a likelihood of success on the merits. *City of Kankakee v.*

*Department of Revenue*, 2013 IL App (3d) 120599, ¶ 17. If these elements are met, then the court moves forward to balance the hardships the parties would respectively face in the event of an adverse decision and to additionally consider the public interests involved. *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 37.

¶ 13 The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court and, on review, the decision will not be disturbed absent an abuse of discretion. *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Kieken v. City of Joliet*, 2023 IL App (3d) 220392, ¶ 27.

¶ 14 "When considering the discretion exercised by the trial court in issuing a preliminary injunction, a reviewing court may decide only whether the petitioner has demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed; that the circumstances lead to a reasonable belief that they probably will be entitled to the relief sought, if the evidence sustains the allegations of the petition; and that matters should be kept in status quo until the case can be decided on the merits. Thus, the only question before the reviewing court is whether there is a sufficient showing to sustain the order of the trial court." *Hartlein v Illinois Power Co.*, 151 Ill. 2d 142, 157 (1992).

¶ 15 The parties disagree about what set of circumstances qualifies as the status quo in this case. Plaintiff argues that the status quo is the continued provision of water to him until the merits of his claims are reached. He contends that the preliminary injunction prevents a threatened wrong by temporarily precluding the City from terminating his water services based on the "nonpayment of a bill for which he was in no way responsible." The City, however,

argues that sometimes, as here, the status quo is a condition of action rather than a condition of rest (citing *Brooks v. LaSalle National Bank,* 11 Ill. App. 3d 791, 799 (1973)). The City contends that Forest View "flagrantly violated the law by failing to pay the City for [its] water service." The City maintains that it would be improper to allow Forest View to continue with its violation of the law just because the violation was occurring at the time the motion for preliminary injunctive relief was filed.

¶ 16    We agree with the trial court that, under the circumstances, the status quo is the continued provision of an essential service to the allegedly aggrieved plaintiff. Plaintiff is the party that filed this lawsuit, and he is the party seeking the preliminary injunctive relief. Plaintiff alleges that the City of Blue Island has expressed an intent to violate his right to equal protection and his right to due process by terminating his water service because of the acts of someone else for whom plaintiff is not responsible. The status quo is "the last actual, peaceable, uncontested status" before the pending controversy. *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 638 (2005) (quoting *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 417 (1991)).

¶ 17    The City bases its argument about the status quo on an ongoing violation of the law, but the alleged wrongdoer in that scenario is Forest View, not plaintiff. If the City and Forest View were quarrelling over a return to *their* status quo, the City would likely be correct in its analysis. But here, plaintiff has alleged that the City is the wrongdoer by attempting to terminate an innocent tenant's water service because of his landlord's failures in violation of that tenant's constitutional rights. There is no allegation or indication in the record that plaintiff has done anything wrong, particularly to the City, so the last peaceable, uncontested status between the parties here is the status where the City is providing water to plaintiff before its alleged attempt to violate his constitutional rights by wrongfully terminating his water service.

¶ 18    Under the Blue Island City Code, when a water bill remains unpaid for ten days after the due date, the water account is deemed to be delinquent. Blue Island City Code §52.023(A) (Aug. 23, 2022). "In each case where delinquent water bills are not paid within the period established above and the City Administrator or designee has not entered an order to the contrary, the water being furnished to such premises shall be shut off by the city and shall not thereafter be restored until such time as the delinquent bill is fully paid or a payment plan is executed by the party responsible for payment of the bill ***." Blue Island City Code §52.023(F)(1) (Aug. 23, 2022).

¶ 19    The City of Blue Island argues that the trial court "erred in fact and in law" when it held that plaintiff has an ascertainable right to continued water service. The City argues that, in order to show a clear and ascertainable right to continued water service, the plaintiff was required to allege an injury to some substantive interest recognized by statute or common law (citing *Kilhafner v. Harshbarger*, 245 Ill. App. 3d 227, 229 (1993)). Both here and in the trial court, plaintiff relies on several statutes and ordinances, along with his lease agreement, in an attempt to show he is entitled to the continuation of his water service despite his landlord's failure to pay the City. The City maintains that all the statutes and ordinances plaintiff relies upon for his claimed entitlement to water service speak to the duty of a landlord to provide continuous water service to a tenant, not a duty by the city to provide free water service to tenants.

¶ 20    Plaintiff's lease agreement obligates him to pay rent to Forest View. According to the motion for a preliminary injunction and all indications from the record, plaintiff has paid his rent on time and in full. In return for paying his rent, Forest View "is responsible for the payment" of water services. In addition to plaintiff's lease, the Cook County Residential Tenant Landlord Ordinance gives tenants in mobile homes, as in any leased dwelling unit, "the right to a dwelling that materially complies with habitability" standards, which includes a tenant's right to running

7

water. See Cook County Residential Tenant Landlord Ordinance §42-803(A)(1) (eff. June 1, 2021), §42-805(C)(1) (eff. June 1, 2021), and §42-805(C)(3)(h) (eff. June 1, 2021). The trial court found these two sources to be persuasive when determining that plaintiff has a clear and ascertainable right to continued water service under the circumstances.

¶ 21    Plaintiff also submits that the Mobile Home Park Act (210 ILCS 115/1 *et seq*.) supports his claimed right. That Act provides that "[a]n adequate supply of water of safe, sanitary quality, *** shall be furnished at each park." 210 ILCS 115/9.4 (West 2022). Plaintiff additionally invokes the Mobile Home Landlord and Tenant Rights Act (765 ILCS 745/1 *et seq*. (West 2022)) which requires the mobile home park owner to supply water to the residents in exigent circumstances. 765 ILCS 741/14.3 (West 2022). Plaintiff also points to the Rental Property Utility Services Act (765 ILCS 735/0.01 *et seq*. (West 2022)) which provides that, when the lease agreement for a property requires the landlord to pay for water services, the landlord must ensure that the water is available to the tenant throughout the lease term and make timely payments for the service so that water service to the tenant is not interrupted. 765 ILCS 735/1 (West 2022). The trial court considered these additional sources and found them to be somewhat supportive of its determination.

¶ 22    In support of their argument that plaintiff has no clear right to relief, defendants cite *Sterling v. Village of Maywood*, 579 F.2d 1350, 1352 (7th Cir. 1978). In *Sterling*, the City terminated a tenant's water service at the landlord's request and declined to reinstate service after the tenant promised to pay for future service. The tenant sued the city for damages and declaratory relief based on the Civil Rights Act, (42 USC § 1983). The United States Court of Appeals for the Seventh Circuit found that a tenant did not have a property right or a substantive due process right to continued water service from the municipality. The *Sterling* court explained

that the plaintiff did not have any contractual relationship or understanding with the Village for continued water service, and she additionally could not point to any "provision in the state's laws or in the municipal ordinances that purports to provide her with a legitimate claim of entitlement to water service." *Id*. at 1354. According to the City of Blue Island, because there is no substantive due process right to continued water service from a municipality, our inquiry should end there because plaintiff cannot demonstrate the existence of a clearly ascertainable right in need of protection.

¶ 23    In this case, however, plaintiff has submitted for consideration several sources of law that were not presented to the court in *Sterling*. The Cook County Residential Tenant and Landlord Ordinance became effective in 2021 and the relevant provisions of the Blue Island City Code became effective between 2007 and 2022, all long after *Sterling* was decided 50 years ago. The Cook County Residential Tenant Landlord Ordinance gives plaintiff "the right to a dwelling that materially complies with habitability," including a right to running water. See Cook County Residential Tenant Landlord Ordinance §42-803(A)(1) (eff. June 1, 2021), §42-805(C)(1) (eff. June 1, 2021), and §42-805(C)(3)(h) (eff. June 1, 2021). The current version of the relevant city code provisions authorizing the City to discontinue Forest View's water service and any city code provision that might give plaintiff a right to claim entitlement to water service were established long after *Sterling* was decided, and such ordinances have successfully been used by tenants in other cases to prevail on similar claims. See Blue Island City Code §52.023(F)(1) (Aug. 23, 2022); *Pilchen*, 728 F. Supp. 2d at 198; *Lewis*, 2011 WL 43029 at *7. These newer sources of law, along with the developments in case law and the alternative ways the courts have viewed the purported deprivation, could establish that plaintiff has a legitimate claim of entitlement to the right.

¶ 24    At this stage of the case, plaintiff is not required to establish that he will be ultimately entitled to relief on the merits. He only needs to show that there is a "fair question" about the existence of his right. *Buzz Barton & Assocs., Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985); see also *Hayden's Sport Center, Inc. v. Johnson*, 109 Ill. App. 3d 1140, 1145 (1982) (for purposes of a preliminary injunction, "[a]ll that is necessary is that the petitioning party raise a fair question as to the existence of a right claimed."). Multiple federal courts have explained that a tenant has a constitutional right to not be faced with constructive eviction based on the absence of an essential to human existence—water—because of the landlord's failure to pay the water service provider. See, *e.g.*, *Davis v. Weir*, 497 F.2d 139, 144-46 (5th Cir. 1974); see also *DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1539 (11th Cir. 1986). Other federal courts have found a property right or due process right in continuing water service based on city codes and ordinances. See *Pilchen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010); *Lewis v. Schmidt*, No. 10 CV 1819, 2011 WL 43029, at *7 (N.D. Ill. Jan. 4, 2011).

¶ 25    In his complaint, plaintiff's claims against the City of Blue Island consist of alleged violations of his constitutional rights. No Illinois court has specifically addressed whether a tenant has any valid constitutional claim against a City who intends to shut off water to the leasehold due to the landlord's failure to pay the water bill. However, several circuits of the federal court of appeals have addressed the issue and found that a municipal water service provider might violate a tenant's constitutional rights if it disconnects the tenant's water service due solely to the landlord's failure to pay.

¶ 26    Beginning in the 1970s with *Davis v. Weir*, 497 F.2d 139, 144-46 (5th Cir. 1974), the court held that a tenant could have a constitutional claim against a municipal water service provider that refused to provide water service to the tenant's leasehold property based on the

outstanding debt of the landlord. The *Davis* court's reasoning was that "[t]he City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another [party] or face constructive eviction from their homes for lack of an essential to existence—water." *Id*. at 144-45. The holding in *Davis* was adopted and applied in multiple other federal courts in the country. See *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684 (6th Cir. 1976) (affirmed at 436 U.S. 1 (1978)) (holding that the water utility "unconstitutionally refused to install [water] services" for the plaintiff due to a debt by a prior tenant for which the plaintiff had no responsibility); *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068 (9th Cir. 1995) (explaining that where the city's stated purpose is to collect debts from the landlord, refusing water service to a tenant because of the debt of an unrelated prior tenant is illogical); *Golden v. City of Columbus*, 404 F.3d 950, 961-62 (6th Cir. 2005) (explaining that "the Equal Protection Clause of the Fourteenth Amendment bars [a municipality] from terminating the water service of a tenant whose landlord owes water bills").

¶ 27 The cases in federal court in which the tenant is found to have a constitutional claim are underpinned by the idea that a governmental policy denying water service to a tenant for a prior tenant or the landlord's debt "divorces itself entirely from the reality of legal accountability for the debt involved," (*Davis,* 497 F.2d at 144-45) because the party who is "penalized by the scheme is not the debtor but an innocent third party with whom the debtor contracted" (*Golden*, 404 F.3d at 962). In 2018, the Second Circuit Court of Appeals confirmed the continuing validity of those prior holdings by explaining that the court "agree[s] with the Fifth, Sixth, Seventh, and Ninth Circuits that requiring a tenant without any legal obligation for a landlord's unpaid bill to pay that bill to retain or restore water service fails rational basis review." *Winston v. City of Syracuse*, 887 F.3d 553, 563 (2d Cir. 2018).

11

¶ 28 Some of the federal court cases decided between the time *Davis* was decided and the time *Winston* was decided only dealt with the issue of whether a current tenant could be penalized for a prior tenant's nonpayment. But *Winston* speaks directly to the issue of whether a current tenant can be penalized for his landlord's contemporaneous failure to pay for water, even if the water bills are comprised of some use by the tenant. In *Winston*, the City argued that the plaintiff was not an "innocent third party" with regard to her landlord's water service arrears because the plaintiff "has lived at the property in question for over ten years, and thus presumably lived on the premises when the arrears accrued." *Id*. at 565. The court flatly rejected the argument.

> "We conclude that that argument is also unavailing. The argument does not distinguish this case from the situation in *Davis*, where the plaintiff 'was current in his rental payments,' and Atlanta 'terminated his water service' because the plaintiff's 'landlord ... refused to pay the water bill.' In both *Davis* and this case, the plaintiffs were current tenants who may have contributed to the water usage resulting in the landlord's unpaid water bill. However, even if this did distinguish Winston's allegations in her complaint from some other cases, it would not change our result. As we discussed above, the City cannot rationally compel tenants to pay their landlord's bills, because the tenants have no legal obligation to pay those bills. Their prior use of water does not change the fact that only the landlord is contractually obligated to the City to pay the water bills. Absent a change in the City's policy to allow tenants to open water accounts, that fact will not change— and the City's alleged water service termination policy will fail rational basis review under the Equal Protection Clause." *Id*. at 565.

¶ 29    For purposes of preliminary relief, we find that plaintiff has raised a fair question about the existence of a clear and ascertainable right—the right to not have his water shut off due solely to the actions of his landlord.

¶ 30    The second and third requirements for a preliminary injunction are an irreparable injury to the movant in the absence of the relief sought and the lack of an adequate remedy at law. *City of Kankakee*, 2013 IL App (3d) 120599, ¶ 17. The City of Blue Island argues that plaintiff will not suffer irreparable injury and has an adequate remedy at law, such that injunctive relief is not appropriate. The City somewhat combines its arguments concerning the second and third requirements for a preliminary injunction, as it highlights that the second and third elements for a preliminary injunction are closely related. See *Ron & Mark Ward, LLC v. Bank of Herrin*, 2024 IL App (5th) 230274, ¶ 62.

¶ 31    The City points to the fact that plaintiff, in his complaint, seeks damages from his landlord, Forest View, for its failure to provide water services as required. The City suggests that the allegedly irreparable damages are compensable by statute and that all the relevant statutes "provide adequate legal remedies and calculable damages for any tenant whose water service is discontinued due to the landlord's failure to pay the water bill." The City also contends that the relevant statutes specifically provide for damages against a landlord when the landlord renders a dwelling uninhabitable. Thus, according to the City, plaintiff is entitled to recover from his landlord all reasonable expenditures to obtain substitute housing while his dwelling is uninhabitable and, therefore, he has an adequate legal remedy.

¶ 32    The City acknowledged in the trial court that living without water, even for only a few days, poses a risk to health and safety. Statutes and case law invariably classify a lack of running water as a condition that renders a dwelling unfit for habitation. If plaintiff is left without

running water at his mobile home for any period of time, his home will be immediately uninhabitable he will clearly suffer an irreparable injury. Among many other sources, the Cook County Residential Tenant Landlord Ordinance gives plaintiff "the right to a dwelling that materially complies with habitability," including a right to running water. See Cook County Residential Tenant Landlord Ordinance §42-803(A)(1) (eff. June 1, 2021), §42-805(C)(1) (eff. June 1, 2021), and §42-805(C)(3)(h) (eff. June 1, 2021). Without running water, a dwelling unit is considered uninhabitable (*id.*), and a tenant is considered constructively evicted when water service to his dwelling is discontinued (2 Illinois Real Property § 11:14 (West 2022)).

¶ 33    The City's argument is more of a challenge to plaintiff's position that he has no adequate remedy at law. While it is true plaintiff seeks money damages along with his prayer for injunctive relief, his pursuit of damages alone does not prohibit him from receiving a preliminary injunction. "The mere existence of a remedy at law, or the fact that a monetary judgment may be the ultimate relief, does not deprive the trial court of its power to grant injunctive relief if that remedy is inadequate." *Ron & Mark Ward*, 2024 IL App (5th) 230274, ¶ 62.

¶ 34    The City suggests that plaintiff's remedy at law is adequate because he can recover from his landlord all the losses that he experiences because of his mobile home being made uninhabitable. However, the City discounts the fact that plaintiff is disabled, and his sole residence is his mobile home. The mobile home park owes upwards of $500,000 to the City so, if the water services are disconnected and not reinstated until the bill is paid, it appears there will be a prolonged period where plaintiff's dwelling is uninhabitable. The idea that plaintiff can go out and purchase substitute housing for such a period and then would be made whole by suing Forest View for damages is a fantasy. The financial remedy alone would not be sufficient especially if, as plaintiff is attempting to prove, he has a constitutional basis for securing an

uninterrupted supply of water under the circumstances. This observation is an apt segue into the fourth and final factor—whether plaintiff has shown a likelihood of success on the merits.

¶ 35     The parties both discuss at some length the Seventh Circuit's decision in *Sterling v. Village of Maywood*, 579 F.2d 1350 (7th Cir. 1978). Although the court in *Sterling* cast doubt on the plaintiff's claimed property right, the court found that the plaintiff adequately stated a claim for both a violation of her right to equal protection of the law and a due process violation. *Id*. at 1355-56. For its equal protection analysis, the *Sterling* court followed the reasoning of *Davis*, and for the due process analysis, the court relied on the specific language of the ordinance to find that the plaintiff might have an entitlement to continued water service. *Id*. In this case, plaintiff has identified several ordinances and statutes to support its position which did not exist in 1978 when *Sterling* was decided. Subsequent rulings from the Second, Fifth, Sixth, Seventh, and Ninth Circuits cited above all cast some doubt on the City's course of action in this case. We find plaintiff has demonstrated a sufficient likelihood of success on the merits to support the trial court's issuance of preliminary injunctive relief.

¶ 36     After addressing the four requirements for granting preliminary injunctive relief, the trial court here moved on to weigh the harm the aggrieved party would suffer from an adverse decision concerning the preliminary relief sought. See *Save the Prairie Society v. Greene Development Group, Inc.*, 323 Ill. App. 3d 862, 871 (2001) ("Finally, the court should weigh the balance of the harms from granting or denying the preliminary injunction."). As the trial court recognized, the harm plaintiff is facing without a preliminary injunction is severe. Plaintiff would be left with an uninhabitable home until the time the court could address his challenges on the merits. The City, meanwhile, loses out on some of its leverage to secure payment from Forest View and must, at least temporarily, pursue other avenues to collect the unpaid debt. Aside from

shutting off the water to the residents of the mobile home park, the City has other means at its disposal to attempt collection of the unpaid debt from the actual party who owes the money. The City has already obtained a lien against Forest View's property. The City can further pursue legal redress which, if it obtains a judgment, would give the City further options to recover the unpaid bill.

¶ 37     In undertaking the balancing of harms, the trial court also observed that the City's delay in taking certain action on the unpaid bill in this case exacerbated its own injury and harmed the innocent tenants by allowing the bill to go unpaid for two years without notice to tenants, thereby undermining their ability to protect themselves by seeking legal remedies sooner. The City repeatedly cites to its municipal code for the proposition that it is entitled, or even required, to shut off an account owner's water when the account is delinquent—which by the express terms of the ordinance occurs 10 days after a bill is unpaid. However, the City did not move to shut off the water at Forest View until two years after the bills began remaining unpaid and when there was more than $800,000 in debt outstanding. The trial court also observed that it would be against the public interest to discontinue water service to the mobile home park. *JL Properties Grp. B, LLC v. Pritzker*, 2021 IL App (3d) 200305, ¶ 57 (before granting a preliminary injunction, the circuit court must balance the hardships and consider the public interests involved).

¶ 38     The City objects to the trial court's analysis attributing some fault to it for the delay and posits that the trial court made a determination of the parties' rights before the case was completed. We simply view the trial court's analysis on this point as part of its balancing of the equities in determining whether preliminary relief is warranted. The trial court's statements do

not fix the parties' rights in any way, they simply provide the parties with an explanation for one of the reasons the trial court weighed the equities in the way that it did.

¶ 39    The City additionally faults the trial court for not expressly discussing the City's arguments relating to the interpretation of municipal ordinances generally. Specifically, the City points out, municipal ordinances are presumed to be constitutional (*Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 346 (2002)) and the party challenging the constitutionality of an ordinance has the burden of rebutting the presumption of validity and establishing a constitutional violation by clear and convincing evidence (*Village of Chatham v. County of Sangamon,* 216 Ill. 2d 402, 419 (2005)). The City contends that the trial court's ruling is also at odds with Illinois law which gives municipalities the authority to make rules for managing their waterworks and sewage systems (citing 65 ILCS 5/11-139-8 (West 2022)). The City argues that its ordinance mandating water service be disconnected as the result of a delinquent water bill is an ordinance passed under the City's police power and "the exercise of police power is presumed to be constitutionally valid" (citing *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529 (1959)). The City concludes that "[a] facial challenge to the constitutionality of the City's legislative enactment and exercise of police power is unlikely to be successful."

¶ 40    We disagree, and we find that plaintiff has raised a fair question about the existence of his right such that the court should preserve the status quo until the case can be decided on the merits. Trial courts are presumed to know the law, and therefore, the trial court is deemed to have known the presumptions afforded to the constitutionality of ordinances and exercises of police power. See *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 17. More importantly, the almost entirely uniform application of *Davis* for the last 50 years across the federal courts in this country to arrive at a finding that a tenant has a constitutional safeguard

17

against a municipality discontinuing water service based on the landlord's failure to pay demonstrates that plaintiff has a likelihood of success on the merits, such that preliminary injunctive relief can be found to be appropriate.

¶ 41 The City of Blue Island stressed during the preliminary injunction hearing that it had exhausted all of its options with Forest View in an attempt to get the mobile home park to pay the outstanding water bill. It explained that shutting off the water service to the park was the last resort in its efforts to be paid. The City argued that the other residents of Blue Island were being forced to subsidize Forest View's water service and that the City was forced to forego upgrades to its waterworks due to the unpaid bill. This type of justification has consistently been presented by municipalities as the reason they should be entitled to shut off water services, but the federal courts have consistently raised concerns about such a course of action.

> "No one could doubt that the Department's methods are calculated to expedite the liquidation of unpaid bills. A collection scheme, however, that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor. The City has no valid governmental interest in securing revenue from innocent applicants who are forced to honor the obligations of another or face constructive eviction." *Davis*, 497 F.2d at 144–45.

Plaintiff has raised a genuine constitutional question regarding the propriety of the City's intended actions. A trial court has broad discretionary powers to grant or deny a preliminary injunction. *Shodeen v. Chicago Title and Trust Co.*, 162 Ill. App. 3d 667, 673 (1987). We conclude that the trial court did not abuse those broad discretionary powers in

this case, and it did not abuse its discretion when it entered the preliminary injunctive relief in plaintiff's favor and against the City.

¶ 42                                    CONCLUSION

¶ 43    Accordingly, we affirm.

¶ 44    Affirmed.