NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250628-U

NO. 4-25-0628

IN THE APPELLATE COURT

FILED
June 26, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ANNA HOLMBERG, TERESA POWELL, JACK POOLE, TY NELSON, TYRONE SMEGO, and THOMAS CHRISTIAN, | ) ) ) | Appeal from the Circuit Court of Henry County |
| Plaintiffs | ) | No. 25MR12 |
| (Thomas Christian, Plaintiff-Appellant), | ) | |
| v. | ) | Honorable |
| THE CITY OF KEWANEE, | ) | Colby G. Hathaway, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court reversed the trial court's denial of plaintiff's motion for a
temporary restraining order where plaintiff established all the necessary elements
for injunctive relief.

¶ 2     Plaintiff, Thomas Christian, filed a motion for a temporary restraining order (TRO)

against defendant, the City of Kewanee (City), seeking an order requiring the City to restore his

water service. The trial court denied Christian's motion, and Christian appealed. For the reasons

set forth below, we reverse and remand with directions that the court immediately enter a TRO in

favor of Christian.

¶ 3                                I. BACKGROUND

¶ 4     Kewanee Partners, LLC (Kewanee Partners) owns South Wind Mobile Home

Estates (South Wind) and other mobile home parks in Kewanee, Illinois. The residents receive

their water from the City through water mains shared by several lots. Residents pay a monthly fee

to Kewanee Partners for their water, and Kewanee Partners is responsible for paying the water bill for the entirety of each mobile home park to the City.

¶ 5 On March 28, 2024, First Secure Community Bank filed a foreclosure action against Kewanee Partners due to its alleged default on the mortgage for South Wind and other mobile home parks. On April 19, 2024, an order was entered in the foreclosure action appointing a receiver. That receiver was later removed. On January 27, 2025, Ira Lautner was appointed receiver of South Wind and Kewanee Partners' other mobile home parks.

¶ 6 On May 21, 2025, the City issued a penalty water bill to Kewanee Partners exceeding $500,000 for South Wind and other mobile home parks. The City notified Kewanee Partners that payment in full was due on June 2, 2025, and that failure to pay would result in the City shutting off water on June 3, 2025.

¶ 7 On May 30, 2025, plaintiff Anna Holmberg, a resident of South Wind, filed a complaint against the City, alleging that terminating her water service would violate her rights to equal protection and substantive due process guaranteed by the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV, § 1). On the same date, Holmberg also filed an emergency motion for a TRO and preliminary injunction, seeking an order enjoining the City from disconnecting water service to her mobile home.

¶ 8 Attached to the complaint and motion was Holmberg's 2021 rental agreement with Kewanee Partners, which required her to pay monthly fees of $300 for lot rent, $35 for water, and $17 for trash pickup. Also attached to the complaint was an affidavit from Holmberg in which she stated that she owned her mobile home in South Wind and did not have the resources to relocate or purchase another home. Holmberg indicated that she stopped paying for water and trash pickup in late 2024 but resumed those payments in 2025 after the new receiver was appointed. She

asserted that she is current on her rent, water, and trash pickup payments.

¶ 9        On June 2, 2025, the trial court entered an order granting Holmberg's motion for a TRO, finding that "Plaintiff satisfied the elements of a temporary restraining order." The court enjoined the City from shutting off water to Holmberg's mobile home and set a hearing on Holmberg's request for a preliminary injunction for June 10, 2025.

¶ 10        On June 4, 2025, Holmberg filed an emergency motion for leave to file *instanter* her first amended complaint, seeking to add as plaintiffs four additional residents of mobile home parks owned by Kewanee Partners: Teresa Powell, Jack Poole, Ty Nelson, and Tyrone Smego. On the same day, Powell, Poole, Nelson, and Smego filed an emergency motion for a TRO and a preliminary injunction requiring the City to restore water to the homes of Smego, Poole, and Powell and enjoining the City from shutting off water to Nelson's property. According to the complaint and motion, the City shut off water to parts of Kewanee Partners' mobile home parks, including the mobile homes of Smego, Poole, and Powell, on June 3, 2025, but as of June 4, 2025, the City had not yet shut off the water to Nelson's mobile home.

¶ 11        Attached to the amended complaint and motion were affidavits from Nelson, Smego, Poole, and Powell. They each stated that they owned mobile homes in parks owned by Kewanee Partners, made payments for rent and water to the receiver, and were current on their monthly payments. Nelson stated that he was required to make monthly payments of $300 for lot rent, $35 for water, and $17 for trash pickup, for a total of $352 monthly. Powell and Poole stated that they were required to pay a total of $375 monthly for lot rent, water, and trash pickup. Smego stated that he was required to pay $300 in monthly rent, which included water.

¶ 12        On June 4, 2025, the trial court entered an order (1) allowing the emergency motion for leave to file *instanter* the first amended complaint, (2) granting the motion for a TRO as to

Nelson "for the reasons stated on the record, consistent with the Court's previous decision in regards to the original Plaintiff," and (3) denying the motion for a TRO as to Poole, Powell, and Smego "for the reasons stated on the record." The court continued:

"Those reasons being that an injunction would not preserve the status quo. As Plaintiffs allege, the status quo was the last peaceable uncontested status which preceded the controversy. This would be a time when the Plaintiffs were receiving water service and the Defendant was receiving payment for this service. Plaintiffs make payment for water service through a third party who is apparently refusing to pay Defendant. The request for [a TRO] would restore water service for Plaintiff, but would not include payment to Defendant, and therefore would not be a return to the last peaceable uncontested status. Additionally, there is an adequate remedy at law in that Plaintiffs could restore individual water service pursuant to 765 ILCS 735/1. Plaintiffs' counsel's argument regarding impossibility was not supported by any facts."

The record does not contain a transcript from this or any other proceeding.

¶ 13 A hearing on all five plaintiffs' motions for a preliminary injunction was held on June 10, 2025. At the hearing, records from Lautner, the current receiver, were admitted into evidence. Those records showed the following monthly payments from the plaintiffs to the receiver from February to May 2025: (1) Holmberg paid $300 in February 2025 and $352 monthly from March to May 2025; (2) Powell paid $375 each month in February and March 2025 and made no payments in April or May 2025; (3) Poole paid $380 in February 2025, $364 in March 2025, $372 in April 2025, and $300 in May 2025; and (4) Nelson and Smego each paid $300 monthly from February to May 2025.

¶ 14        Following the hearing, the trial court issued a preliminary injunction, enjoining the City from shutting off water service to Holmberg and Nelson. However, the court denied an injunction to Smego, Poole, and Powell "for the reasons previously stated and issues with payments specific to those plaintiffs."

¶ 15        On June 13, 2025, plaintiffs filed an emergency motion to file *instanter* a second amended complaint, seeking to add Christian as a plaintiff. According to the complaint and Christian's affidavit attached thereto, Christian lived in South Wind, owned his mobile home there, had an agreement with the receiver to pay $300 monthly for rent and water, made all his monthly payments to the receiver, and had his water shut off by the City on June 3, 2025. Christian also filed a motion for a TRO and preliminary injunction, seeking an order requiring the City to restore water service to his mobile home. According to documents from the receiver, which were admitted into evidence, Christian made monthly payments of $300 from February to May 2025.

¶ 16        On June 17, 2025, the trial court entered an order granting plaintiffs' emergency motion to file *instanter* their second amended complaint and denying Christian's emergency motion for a TRO "for the reasons provided in previous court orders." On June 18, 2025, Christian filed a notice of interlocutory appeal, seeking reversal of the judgment denying his motion for a TRO.

¶ 17                                II. ANALYSIS

¶ 18        When, as here, an interlocutory appeal is brought pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), controverted facts and the merits of the case are not decided. *Woods v. Patterson Law Firm, P.C.*, 381 Ill. App. 3d 989, 993 (2008). "The only question in such an appeal is whether there was a sufficient showing to affirm the order of the trial court granting or denying the relief requested." *Woods*, 381 Ill. App 3d at 993. The standard of review

is whether the court abused its discretion in granting or denying the plaintiff's requested injunctive relief. *Woods*, 381 Ill. App. 3d at 993. We will find an abuse of discretion "when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 19       To warrant a TRO, the plaintiff "must demonstrate [(1)] an ascertainable right in need of protection, [(2)] a likelihood of success on the merits, [(3)] irreparable harm in the absence of injunctive relief, and [(4)] the lack of an adequate remedy at law." *Bridgeview Bank Group v. Meyer*, 2016 IL App (1st) 160042, ¶ 12. A party seeking a TRO "need only show that he raises a 'fair question' regarding the existence of his right and that the court should preserve the status quo until the case can be decided on the merits." *Stanton v. City of Chicago*, 177 Ill. App. 3d 519, 524 (1988). "The status quo to be preserved is the last actual, peaceable, uncontested status which preceded the pending controversy." *Martin v. Eggert*, 174 Ill. App. 3d 71, 77 (1988).

¶ 20       When the trial court denied Christian's motion for a TRO, it did not articulate its reasons but stated that its denial was "for the reasons provided in previous court orders." In its previous orders, the court denied a TRO and preliminary injunction to Poole, Powell, and Smego on the bases that (1) it was impossible to restore the status quo because "the last peaceable uncontested status which preceded the controversy" was "when the Plaintiffs were receiving water service and the Defendant was receiving payment for the service," (2) they had an adequate remedy at law "pursuant to 765 ILCS 735/1," and (3) there were "issues with payments specific to those plaintiffs." For the following reasons, these findings are arbitrary and unreasonable, and, thus, the court abused its discretion in denying Christian's motion for a TRO.

¶ 21       The trial court erred in finding that the status quo could not be preserved by granting a TRO to Christian. In determining what status quo is to be preserved, the court must focus solely

on the parties to the action. See *Hammer v. City of Blue Island*, 2024 IL App (1st) 232464-U, ¶¶ 16-17 (finding that the third-party landlord's failure to pay the city for the tenant's water had no bearing on the status quo between the plaintiff tenant and the defendant city). Here, Christian filed this lawsuit and sought a TRO against the City, as the alleged wrongdoer, for violating his rights to equal protection and due process by terminating his water service because of a third-party's failure to pay. Payment to the City for Christian's water was the responsibility of the mobile park owner, Kewanee Partners, and thereafter the receivers, not Christian. Thus, "the last peaceable, uncontested status between the parties here is the status where the City is providing water to plaintiff before its alleged attempt to violate his constitutional rights by wrongfully terminating his water service." *Hammer*, 2024 IL App (1st) 232464-U, ¶ 17.

¶ 22        The trial court erred in finding that the status quo was "when the Plaintiffs were receiving water service and the Defendant was receiving payment for the service" because Christian, as the plaintiff in the TRO action, had no control over whether the City was paid. Instead, the status quo between Christian and the City that Christian sought the court to preserve was when the City was providing water to him. That status quo could had been preserved by the court ordering the City to restore Christian's water service. Therefore, the court's conclusion that it could not restore the status quo was erroneous.

¶ 23        Additionally, the trial court's grant of a TRO to Holmberg and Nelson undercuts the court's conclusion that it could not preserve the status quo as to Christian. The only difference between those plaintiffs and Christian was that Christian's water had already been turned off when he filed his motion for a TRO, whereas Holmberg's and Nelson's was still on when they filed their respective motions. However, that was not a valid reason for denying Christian's TRO because courts can grant injunctive relief to compel a party to perform an affirmative act, including

- 7 -

providing water service to a plaintiff. See *Davis v. East St. Louis & Interurban Water Co.*, 133 Ill. App. 2d 801, 804-05 (1971). The court's refusal to restore the status quo by granting Christian's motion for a TRO was an abuse of discretion.

¶ 24 Another basis for the trial court's denial of Christian's TRO was that Christian had an adequate remedy at law, specifically, section 1 of the Rental Property Utility Service Act (765 ILCS 735/1 (West 2024)), which provides that when a landlord is required by an agreement to pay for a utility service, such as water, for a tenant and fails to do so, the tenant may (1) terminate the lease or (2) pay for their own service. That section further provides that a utility provider must immediately restore and continue service to any tenant who (1) requests that the bill be put in his or her name, (2) establishes satisfactory credit references or provides a security deposit, and (3) agrees to pay future bills. 765 ILCS 735/1 (West 2024).

¶ 25 Presumably, the trial court was relying on the provision above allowing tenants to pay for their own utility service by requesting that a bill be put into their own name. However, as Christian alleged in his complaint and stated in his affidavit, individual billing is not possible because in the mobile home park where he lives, water mains are shared by many residents. The City admitted in its responsive pleadings that individual billing was not available but indicated that there was an option for tenants to pay for installation of their own water service lines, which would allow for individual bills to each mobile home owner. However, the City failed to indicate when or how installation would be done or how much it would cost residents to pursue this option. Additionally, Christian averred in his affidavit that he had limited income and did not have the funds to move his mobile home, likely making payment for the installation of a water service line cost-prohibitive. Even if Christian could afford this option, it is hard to understand why it would be an adequate remedy for Christian to have to forgo running water in his home until the

installation of a new line is complete.

¶ 26 To have an adequate remedy at law that precludes injunctive relief, "the remedy must be clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *Tierney v. Village of Schaumburg*, 182 Ill. App. 3d 1055, 1060 (1989). Where a remedy does not meet all these requirements, it is does "not preclude the issuance of an injunction." See *Borrowman v. Howland*, 119 Ill. App. 3d 493, 501 (1983) (finding that an incomplete legal remedy would not preclude the issuance of an injunction). The mere existence of some remedy does not deprive a court of its power to grant injunctive relief if that remedy is "not sufficiently adequate." See *Ron & Mark Ward, LLC v. Bank of Herrin*, 2024 IL App (5th) 230274, ¶ 40.

¶ 27 Here, the "adequate remedy" espoused by the trial court was not clear, complete, or as practical and efficient as restoring Christian's water service while the parties litigate the underlying merits of the case. As explained above, the City provided no information about how and when a new water service line could be installed to Christian's residence or the costs for doing so; therefore, this remedy is not clear. Additionally, the remedy is not complete because the installation of a water line will require Christian to expend money, which he has asserted he does not have. Furthermore, the remedy is not as practical or efficient as restoring Christian's water immediately; even if Christian could afford to install a water line, the installation will presumably require time, and until the installation is complete, Christian will not have access to running water in his residence, posing a risk to his health and safety. See *Hammer*, 2024 IL App (1st) 232464-U, ¶ 32.

¶ 28 Again, the trial court's granting of a TRO to Holmgren and Nelson belies its conclusion that Christian had an adequate remedy at law. In granting a TRO to Holmberg and

Nelson because they "satisfied the elements for a [TRO]," the court necessarily found that they did not have an adequate remedy at law. However, the court provided no explanation as to why they did not have an adequate remedy but Christian did. Furthermore, nothing in the record suggests that Holmberg, Nelson, and Christian were not similarly situated, as they were all tenants of Kewanee Partners' mobile home parks, owned their mobile homes, and received water from the City through shared water mains on the property. The only significant difference in Christian's situation compared to Holmberg's and Nelson's was that the City had turned Christian's water off before he brought his action. However, that has no bearing on the existence of an adequate remedy. Thus, the court abused its discretion in finding that Christian had an "adequate remedy at law."

¶ 29    Finally, the City argues that the trial court did not abuse its discretion in denying Christian a TRO because, like the other plaintiffs who were denied a TRO, Christian had "issues with payments." According to the City, Christian failed to prove that "he was paying water service to the receiver." However, the record does not support this contention. Christian provided an affidavit in which he averred that he made an agreement with the prior receiver to pay $300 in monthly rent, which included water, and that he was current in his payments. The City presented no evidence refuting that Christian's monthly payments of $300 included water service. Additionally, the receiver's records supported Christian's assertion that his payments were current, showing that Christian paid the receiver $300 per month from February to May 2025. Thus, the evidence does not support that Christian had "issues with payments."

¶ 30    The City attempts to distinguish Christian and the other plaintiffs who were denied a TRO from Holmberg and Nelson, who were granted a TRO, based on their payment history, but a review of plaintiffs' payments supports no such distinction. For example, Holmberg was granted a TRO even though she admitted that she did not pay for water in late 2024 and early 2025 and the

receiver's records reflected that Holmberg paid for lot rent only in February 2025. Additionally, the evidence established that Nelson never paid for water because, according to his affidavit, he was to pay $300 for lot rent, $35 for water, and $17 for trash pickup; however, the receiver's records showed that Nelson paid only $300 per month from February to May 2025, the same amount Christian paid during that same time period. Neither the trial court nor the City provided any explanation as to why Christian had "issues with payments" for paying the same amount Nelson, who was granted a TRO, paid. This is particularly troubling since Nelson admitted in his affidavit that his $300 payments did not include water and Christian stated that his $300 payments did.

¶ 31　　　　Here, it appears that the trial court drew an arbitrary line in the sand, granting injunctive relief to Holmberg and Nelson because their water was still on when they filed their TRO motions and denying it to all other plaintiffs, including Christian, because their water was turned off when they sought a TRO. The City contends that Holmberg was entitled to a TRO because she presented a lease to establish exactly how much she was required to pay for water, lot rent, and trash pickup. While this is true, no other plaintiff, including Nelson, did so. Furthermore, Christian's uncontested affidavit established that his payments to the receiver included water payments, and the receiver's records verified that Christian made his monthly payments, while the information in the receiver's records and Nelson's own affidavit established that Nelson did not make the water payments. We find no reasonable justification for the court's decision to grant Nelson's motion for a TRO and deny Christian's motion.

¶ 32　　　　Christian raised "a fair question" as to the existence of all the elements of a TRO, which is all that is required for issuance of a TRO. See *Stanton*, 177 Ill. App. 3d at 524. First, he sufficiently established that he has a clearly ascertainable right "to not have his water shut off due

solely to the actions of his landlord." See *Hammer*, 2024 IL App (1st) 232464-U, ¶ 29. Second, he showed an irreparable injury because being left without running water at his mobile home renders the home uninhabitable, causing him irreparable injury. See *Hammer*, 2024 IL App (1st) 232464-U, ¶ 32. Third, Christian does not have an adequate remedy at law because the remedy proposed by the City is unclear, incomplete, and not immediate. Finally, he has demonstrated a sufficient likelihood of success on the merits because tenants arguably have "an entitlement to continued water service." *Hammer*, 2024 IL App (1st) 232464-U, ¶ 35. Christian has raised a genuine constitutional question regarding the propriety of the City's actions and presented a *prima facie* case for a TRO. Thus, the trial court abused its discretion when it denied Christian's motion for a TRO.

¶ 33                                    III. CONCLUSION

¶ 34        For the reasons stated, we reverse the trial court's judgment denying Christian's motion for a TRO and remand with directions that the court immediately enter a TRO in favor of Christian and order the City to restore Christian's water until the court can conduct a hearing on Christian's motion for a preliminary injunction.

¶ 35        Reversed and remanded with directions.