YELLOW CAB COMPANY, INC., *et al.*, Plaintiffs-Appellants, *v.*
PRODUCTION WORKERS UNION OF CHICAGO AND VICINITY,
LOCAL 707, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-2516

Opinion filed December 31, 1980.

Seyfarth, Shaw, Fairweather & Geraldson, and Jesmer & Harris, both of Chicago (Joel H. Kaplan, Andrew R. Laidlaw, Charles Tannen, and Gary W. Reid, of counsel), for appellants.

Howard E. Gilbert, Michael D. Richman, and Stuart P. Levine, all of Herman, Tannebaum, Levine & Gilbert, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Yellow Cab Company, Inc., and Checker Taxi Company, Inc. (cab companies), appeal from an order of the circuit court of Cook County which denied their petition for a preliminary injunction against the defendants, the Production Workers Union (Union) and cab

drivers who lease cabs from the cab companies. The plaintiffs sought to enjoin what they characterize as a group boycott by the lessee drivers. The drivers classify their actions as a strike.

In denying the preliminary injunction, the trial court found that: (1) the evidence did not sustain the plaintiffs' allegations that the defendants have unlawfully engaged in a contract, combination or conspiracy to fix prices in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1979, ch. 38, par. 60—1 *et seq.*); (2) the picketing by the defendants was constitutionally protected; and (3) the defendants have not by threat, violence and intimidation deprived the plaintiffs of their right to conduct business to their irreparable harm or loss. The plaintiffs contend that the trial court abused its discretion in making these findings.

The cab companies employ drivers on both a commission basis and a leased cab basis. Until July of 1980 the lessee drivers did not belong to a union. At about that time, the Production Workers Union began to organize the lessee drivers and requested a meeting with Yellow and Checker to discuss the drivers' grievances. These grievances will be detailed subsequently.

The cab companies refused to meet with the Union and a strike was called on August 12, 1980. A temporary restraining order was entered that same day and ran with one amendment until August 22, 1980. The plaintiffs then moved for a preliminary injunction. They claimed that the defendants engaged in numerous acts of violence and intimidation during the pendency of the temporary restraining order. After an extended evidentiary hearing, the court denied the plaintiff's motion.

A preliminary injunction is an extraordinary remedy which will not issue unless a clear right to relief is shown. (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.) The decision to grant or deny a preliminary injunction rests in the sound discretion of the trial judge. Appellate review is restricted to a determination of whether the trial judge correctly exercised his broad discretionary powers. *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68.

For a preliminary injunction to issue, the plaintiff must establish: (1) possession of a certain and clearly ascertained right which needs protection; (2) immediate and irreparable injury if the injunction is denied; (3) probability of success on the merits; and (4) no adequate remedy at law. (*Central Building & Cleaning Co. v. Vodnansky* (1980), 84 Ill. App. 3d 586, 406 N.E.2d 32.) The failure to establish any one of these elements requires the denial of the preliminary injunction.

The plaintiffs first contend that the trial court abused its discretion in finding that the evidence did not sustain the plaintiff's allegations of antitrust violations. For a preliminary injunction to issue, the plaintiffs were required to show that they are likely to establish at a trial on the

merits that the defendants' actions violated the antitrust laws. The plaintiffs argue that as independent contractors, the lessee drivers are in competition with one another. Therefore, any attempt by the drivers to negotiate a lower lease rate with the cab companies amounts to either price fixing or an unreasonable restraint on trade. The defendants deny that their actions are in violation of the antitrust laws. They characterize the present situation as a "labor dispute" and claim that lowering the lease rate is only one of several legitimate labor objectives. The defendants argue that even if their actions are found to violate the antitrust laws, they are immune from injunctive procedure by the so-called "labor exemption." (Ill. Rev. Stat. 1979, ch. 38, par. 60—5(1).) This section states that the antitrust laws shall not make illegal the activities of any labor organization directed solely to legitimate labor objectives.

■■ The fact that the drivers are independent contractors does not in and of itself preclude the existence of a legitimate labor dispute which would exempt the defendants' actions from the antitrust laws. (*Milk Wagon Drivers' Union, Local 753 v. Lake Valley Farm Products, Inc.* (1940), 311 U.S. 91, 85 L. Ed. 63, 61 S. Ct. 122.) Nor does the fact that an agreement may have an impact on price render the labor exemption inapplicable. (*American Federation of Musicians v. Carroll* (1968), 391 U.S. 99, 20 L. Ed. 2d 460, 88 S. Ct. 1562.) If a union endeavor is intimately related to wages, hours and working conditions, it is beyond the reach of antitrust liability. (*Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.* (1965), 381 U.S. 676, 14 L. Ed. 2d 640, 85 S. Ct. 1596.) We believe that the question of whether the negotiations concerning the lease rate constitute a "legitimate labor objective" should be reserved until the parties have had an opportunity to present all of the evidence on this issue. There is evidence in the record supporting the defendants' contention that the purpose of the strike was to improve the lessee drivers' overall working conditions. The testimony at the hearing clearly reveals that lowering the lease rate was one of several grievances which the lessee drivers wished to discuss with the cab companies. At the hearing on the preliminary injunction the defendants presented evidence concerning most if not all of the following grievances: unsafe cabs, breakdowns of cabs, arbitrary assignment of cabs, unauthorized charges against security deposit bonds for tickets, damages, gas, accidents and arbitrary late changes, demands for payoffs to various company employees to obtain operating cabs, payoffs to obtain repair service, payoffs to obtain towing service, payoffs to avoid excessive charges for gasoline, breakdown pay (rebate of rent while the cab is inoperative), shoptime (rebate of rent while the cab is being maintained), price of the lease, lack of medical and disability insurance, and bullet-proof shields.

■■ In our view it is inappropriate at this stage of the proceedings to alter

the court's finding that the evidence fails to sustain the plaintiffs' allegations of price fixing. When the proceedings on the permanent injunction begin, the plaintiffs will have the opportunity to demonstrate that the defendants' activities constitute price fixing or an unlawful restraint of trade. At the same time, the defendants will be able to offer evidence as to the applicability of the labor exemption to the antitrust laws. These matters will be determined on their merits following the proceedings on the permanent injunction. See *Affiliated Hospital Products, Inc. v. Baldwin* (1979), 79 Ill. App. 3d 74, 398 N.E.2d 290.

The plaintiffs next contend that the trial court abused its discretion in finding that the picketing by the defendants was protected by the first and fourteenth amendments to the United States Constitution. The plaintiffs raise two arguments concerning this issue. First, they claim that the picketing is in furtherance of an illegal purpose and therefore enjoinable even if wholly peaceful. We believe that our conclusion that the plaintiffs failed to establish an illegal purpose for the defendants' actions is dispositive of this first argument. Second, the plaintiffs argue that the picketing should be enjoined because it has been enmeshed with violence. In support of this argument, the plaintiffs cite *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers, Local 753* (1939), 371 Ill. 377, 21 N.E.2d 308, *aff'd* (1940), 312 U.S. 287, 85 L. Ed. 836, 61 S. Ct. 552, where the Supreme Court held that the Constitution does not protect picketing enmeshed with contemporaneously violent conduct.

Again our review of this matter is restricted to a determination of whether the trial court's finding constituted an abuse of discretion. The court found that there was no evidentiary connection between the acts of violence cited by the plaintiffs and the lawsuit before it. The parties introduced sharply conflicting testimony concerning the extent and nature of the violence which occurred. The plaintiffs presented evidence that since the boycott began, several of their cabs had been vandalized. Cabs were burned. Others had their tires slashed and windshields shattered. There was testimony that some drivers who wanted to lease cabs were threatened and intimidated into taking the cabs back to the cab barns. A garage manager for one of the cab companies testified that a Union official stood outside his garage and took down the names of those drivers who decided to work. The defendants offered testimony that the Union opposed the violence and even offered a reward for information leading to the arrest of those who committed violent acts. The president of Yellow Cab Company conceded that no one had been arrested for any violent activities while picketing in front of his cab barns. Furthermore, the defendants presented testimony denying involvement in several of the specific acts alleged by the plaintiffs.

■■ Where the court has the opportunity to hear the testimony in the

context of the trial and to observe the demeanor of the witnesses, it is in a much better position to ascertain truth and detect falsehood than is a court of review. (*Curran v. Curran* (1960), 19 Ill. 2d 164, 166 N.E.2d 13.) We believe that the evidence supports the trial court's finding that there was no nexus between the alleged violent acts and the defendants in this cause. Under these circumstances, we cannot say that the trial court's determination that the defendants' picketing was constitutionally protected constituted an abuse of discretion.

The plaintiffs' last contention is that the trial court erred in finding that the defendants did not interfere with the plaintiffs' contractual relations and that there was no irreparable harm to the plaintiffs' business. The plaintiffs argue that the defendants, through threats and intimidation, sought to prevent lessee or commission drivers from working.

As previously mentioned, the plaintiffs must establish immediate and irreparable harm as a prerequisite to obtaining a preliminary injunction. Here, the plaintiffs claimed that they will be forced to go out of business unless the defendants' activities are enjoined. However, the plaintiffs' counsel admitted that a week after the temporary restraining order expired, the cab companies were operating at 85% capacity. Because we agree with the trial court's finding that the plaintiffs failed to establish the type of immediate and irreparable harm which would necessitate injunctive relief, we find it unnecessary to discuss the substantive aspects of this issue.

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.