2024 IL App (2d) 240568-U
No. 2-24-0568
Order filed October 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| HYPERACTIVE GAMING LLC, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 24-CF-418 |
| | ) | |
| CITY OF WAUKEGAN, | ) | Honorable |
| | ) | Janelle K. Christensen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Kennedy and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in denying a request for a TRO where the plaintiff failed to establish a likelihood of success on its claims that the City's push tax on video game terminals was unconstitutional or that it was preempted by section 90 of the Video Gaming Act (230 ILCS 40/90 (West 2022)).

¶ 2    In July 2024, the defendant, the City of Waukegan, initiated administrative proceedings against the plaintiff, Hyperactive Gaming LLC, for the plaintiff's failure to comply with a City ordinance.  After a hearing officer found in favor of the City, the plaintiff filed a verified complaint for administrative review and a temporary restraining order (TRO) in the circuit court.  After a

hearing on the latter, the trial court denied the request for a TRO. The plaintiff filed this expedited appeal. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The plaintiff has been a licensed video gaming terminal operator in Illinois since 2012 and operates approximately 253 video game terminals (VGTs) at 42 video gaming establishments in Illinois. The plaintiff started providing VGTs at one location in the City in February 2023 and a second location in early 2024.

¶ 5     The City approved video gaming within its boundaries in 2018. Section 3-76A of the Waukegan Code of Ordinances (Waukegan Code) required all terminal operators with VGTs in the City to be licensed by the City. See Waukegan Code, § 3-76A (amended Nov. 21, 2022). In April 2020, the City adopted ordinance No. 20-O-28 (the Push Tax Ordinance) which imposed a "push tax *** upon any person who participates in the playing of video gaming terminals" at the rate of "one cent per play." See Waukegan Code, § 3-95(a) (adopted April 9, 2020). Section 3-75 defined play as "each individual push of the video gaming terminal which initiates the simulation provided by the video gaming terminal. Play shall not include the physical pushing of individual wager amounts, selection types of the games on the terminal or the entry of any information or printing of winning receipts." Waukegan Code, § 3-75 (amended Nov. 21, 2022).

¶ 6     The Push Tax Ordinance further provided that "[i]t shall be the joint and several duty of any terminal operator and licensed establishment to secure, from each person participating in the play of a video gaming terminal, the push tax imposed by this section" and required the push tax and a tax return to be submitted to the City every month. Waukegan Code, § 3-95(d) (adopted April 9, 2020). However, the Push Tax Ordinance explicitly stated that "[t]he ultimate obligation of the push tax shall remain on the individual playing the video gaming terminal, and shall *never*

be shifted to the terminal operator." (Emphasis added.) *Id.* § 3-95(d)(2). Finally, the Push Tax Ordinance imposed, as penalties for non-compliance, a "fine of $500.00 for a first offense, $750.00 for a second offense, and $1,000.00 for a third offense and shall be subject to a mandatory revocation of any license to operate a video gaming terminal within the city jurisdictional limits for the third offense. *Id.* § 3-95(f)(a)(iv).

¶ 7      The legislature subsequently enacted section 90 of the Video Gaming Act (Gaming Act) (230 ILCS 40/90(c) (West 2022)), prohibiting municipalities from imposing any type of tax upon terminal owners or licensed video gaming establishments. However, that section included a provision stating that "[a]ny home rule municipality that has adopted an ordinance imposing an amusement tax on persons who participate in the playing of video gaming terminals before November 1, 2021[,] may continue to impose such amusement tax pursuant to such ordinance ***." *Id.* § 90(d).

¶ 8      The record indicates that, in August 2020, the Illinois Gaming Machine Operators Association (IGMOA) and several terminal owners (but not the present plaintiff) sued the City, challenging the Push Tax Ordinance on several grounds (see Lake County Case No. 20-CH-514). Many of the grounds were abandoned or dismissed, but on May 18, 2022, circuit court Judge Daniel Jasica entered summary judgment in favor of the City on the two remaining counts. Judge Jasica held that the Push Tax Ordinance did not violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) and did not exceed the City's home rule authority. The IGMOA filed a notice of appeal, and that case is docketed in this court as appeal No. 2-23-0431.

¶ 9      On July 3, 2024, the City initiated the administrative proceeding that is the subject of the present action, which alleged that the plaintiff failed to comply with the City's ordinances during the month of February 2023 (the "February 2023 Action"). At the same time, the City initiated

second and third actions also citing the plaintiff for failing to comply with the City's ordinances in March and April of 2023 (the "March 2023 Action" and the "April 2023 Action"). The City alleged that, in each of those months, the plaintiff failed to be licensed as required under § 3-76A, and failed to remit the push tax and the monthly tax return as required under § 3-95 of the City's ordinances. See Waukegan Code, §§ 3-76A, 95.

¶ 10    In August 2024, separate hearings were held for each violation before a hearing officer. While transcripts from those hearings are not included in the record, the hearing officer's September 16, 2024, written decision as to the February 2023 action is included. The hearing officer noted that the plaintiff's operations manager testified that he was not aware of the plaintiff's responsibilities under the ordinance at issue until November 2023 and admitted that he did not collect or remit the push tax or the tax returns to the City in February 2023. The operations manager further testified that once he was aware of the ordinance at issue, he obtained the appropriate license and, in December 2023, filed the push tax return and submitted the collected push taxes for November 2023. The hearing officer concluded that the plaintiff was liable for failing, in February 2023, to collect and remit the push tax, to file push tax returns, and to be licensed as a terminal operator. The hearing officer imposed a fine of $500 for each offense for a total fine of $1500. The hearing officer declined to address any arguments as to the constitutionality of the Push Tax Ordinance.

¶ 11    On September 18, 2024, the plaintiff filed a verified nine-count complaint for administrative review. In count I, the plaintiff alleged that the hearing officer's decision was erroneous and contrary to law. The remaining counts requested a declaratory judgment that: the City's push tax was preempted by section 90(d) of the Gaming Act (230 ILCS 40/90(d)) (count II); the use of a collection receptacle and remittance of money collected therein complied with the

Push Tax Ordinance (count III); the push tax was unconstitutional because it exceeded the City's home rule authority (count IV); the push tax at issue violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) (count V); the ordinance was an improper tax on occupation (Ill. Const., 1970, art. VII, § 6(e)) (count VI); the ordinance was an impermissible license for revenue (*id.*) (count VII); the Push Tax Ordinance was unconstitutionally vague because "play" was poorly defined (count VIII); and the Push Tax Ordinance was an illegal inducement (count IX).

¶ 12 On September 19, 2024, the plaintiff filed an amended emergency motion for TRO and preliminary injunction, seeking to prohibit the City from revoking its terminal operator license. The plaintiff noted that, once the hearing officer rendered his decision regarding the March and April 2023 actions, the City ordinance called for mandatory revocation of its license. See Waukegan Code, § 3-95(f)(a)(iv). The plaintiff argued that it had a clearly ascertainable right in need of protection because, if its license was revoked, it would suffer irreparable harm in that it would be in violation of its agreements with establishment owners in the City, suffer harm to its reputation, and face replacement by a competing terminal owner.

¶ 13 The plaintiff argued that it had a likelihood of success on the merits as to its argument that the push tax did not fall within the amusement tax exception contained in section 90(d) of the Gaming Act (230 ILCS 40/90(d) (West 2022)), because the assertion was supported by a ruling in the circuit court of Cook County (*Illinois Gaming Machine Operators Association et al. v. Village of Oak Lawn*, Case No. 20-CH-2928). In that case, the circuit court of Cook County ruled that section 90(d) applied retroactively but that Oak Lawn's tax was not an amusement tax covered by section 90(d)'s exception because the tax was levied directly and explicitly on terminal owners.

¶ 14    The plaintiff also argued, in relevant part, that the Push Tax Ordinance was unconstitutionally vague because terminal owners had to guess at which "plays" were subject to the push tax. For example, it was unclear if the tax applied to a "pre-play" or to tactical decisions, such as when a player pushes on the VGT to discard cards or raise and lower bets. The plaintiff asserted that terminal owners could guess at what a taxable play was, but that they were not confident given the vagueness of the ordinance.

¶ 15    Finally, the plaintiff argued that if the TRO was not granted it would suffer irreparable harm to its business, reputation, goodwill, and competitive position and that there was no adequate remedy at law. It also asserted that the balance of hardships was in its favor because the City would suffer no harm as it would still be collecting revenue generated by the plaintiff's business because the State distributed a portion of the revenue to municipalities where gaming occurred.

¶ 16    On September 25, 2024, a hearing was held on the motion for TRO. The plaintiff acknowledged that the hearing officer had not yet issued rulings in the March and April 2023 actions. The plaintiff indicated that the hearing officer did not want to enter the orders and risk the plaintiff's license being revoked until the trial court ruled on the motion for a TRO. The plaintiff stated that all terminal owners in Waukegan were currently collecting the push tax via receptacles with a sign requesting the tax and any money collected was given to the City with a monthly return. If the push tax was collected through the VGT, there would need to be amendments to the Gaming Act and modifications to the VGTs' software. The plaintiff said this could take years and that this was why no terminal operators were collecting the push tax through the VGT. The plaintiff's arguments that it had a likelihood of success on the merits were in accord with its written motion. The plaintiff argued that maintaining its' terminal operator license was a

right in need of protection, it would suffer irreparable harm if the license was revoked, there was no adequate remedy at law, and the City would suffer no hardship from a TRO.

¶ 17     The City argued that the Push Tax Ordinance was presumed constitutional. The City asserted that the ordinance was not unconstitutionally vague because everyone knew that if a player pressed a button to place a bet for money, it was a taxable event. The City stated that most terminal operators did not think the word "play" was vague. The City acknowledged that collecting the push tax through the VGT would require legislation and software changes, but stated that no terminal owner had ever made requests for such changes to the appropriate bodies. The City argued that there was a myriad of ways to collect the push tax and that they would not have filed the actions if the plaintiff had tried to do so—the problem was that the plaintiff did not even try to collect the push tax. It did not want to revoke licenses, but it expected the plaintiff to at least make a good faith effort. The City acknowledged that this was a complicated case that would likely go to the Illinois Supreme Court but that, nonetheless, the plaintiff had not established the elements for a TRO.

¶ 18     Following argument, the trial court denied the request for a TRO. The trial court acknowledged that the plaintiff had an ascertainable right in need of protection because the City intended to revoke the plaintiff's terminal operator license. The trial court concluded that the plaintiff had not established a fair question as to the likelihood of success on the merits. The trial court noted that Judge Jasica addressed claims similar to the claims in counts IV and V of the plaintiff's verified complaint and held that the push tax was constitutional. The trial court found that the ordinance at issue in the Cook County case relied on by the plaintiff, for the proposition that the push tax was not an amusement tax, was different from the City's ordinance. As to the plaintiff's remaining claims, the trial court found that it needed evidence and testimony to

determine whether there was a likelihood of success on the merits. The trial court stated that it had concerns about how terminal operators were supposed to collect the push tax. While there were issues of law such as the definition of "play" and "amusement tax," there were questions of fact as to how the push tax was to be collected and the statute enforced. The trial court also noted that the plaintiff had not raised a fair question as to irreparable harm because there were indications that the plaintiff's business in the City was very small relative to its overall business. The trial court stated that it could not "say with certainty" that the plaintiff would suffer irreparable harm or that there was no adequate remedy at law. Finally, the trial court stated that it did not have enough information to balance the equities. Thereafter, the plaintiff filed this timely notice of interlocutory appeal.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, the plaintiff argues that the trial court erred in denying the TRO. A TRO is a drastic remedy that should only be granted in exceptional circumstances and for a brief duration. *Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶ 10. The purpose of a TRO is to allow the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction. *Delgado v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 481, 483 (2007).

¶ 21    The party seeking the TRO or preliminary injunction must demonstrate that there is a "fair question" as to each of the following: (1) a clear right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006); *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 22. The failure to establish any one of these elements is a sufficient basis to deny a request for a TRO. *Yellow Cab Co. v. Production Workers*

*Union of Chicago & Vicinity, Local 707*, 92 Ill. App. 3d 355, 356 (1980).  If a movant establishes all four of these elements, the trial court may then consider whether the balance of harms favors the grant or denial of injunctive relief.  *Bridgeview Bank Group v. Meyer*, 2016 IL App (1st) 160042, ¶ 12.  The grant or denial of injunctive relief such as a TRO is a matter within the trial court's discretion and is generally reviewed only for an abuse of that discretion.  *Mohanty*, 225 Ill. 2d at 62-63.  However, to the extent that the trial court's decision rests on a purely legal issue such as the interpretation of a statute or contract, we review that interpretation *de novo*.  *Id.* at 63.

¶ 22    The plaintiff argues that *de novo* review is appropriate because the claims raised in its verified complaint involve statutory interpretation and challenges to the constitutionality of the ordinance.  However, in rendering its decision, the trial court did not interpret the ordinance or resolve any claims as to its constitutionality.  The trial court addressed only whether the plaintiff raised a fair question as to the four elements required for the imposition of a TRO.  Accordingly, we will review the trial court's decision for an abuse of discretion.

¶ 23    The plaintiff's first contention on appeal is that the trial court erred in denying the TRO because it raised a fair question that the push tax was not an allowed amusement tax under section 90(d) of the Gaming Act (230 ILCS 40/90(d) (West 2022)).  The plaintiff's raises two arguments in support of this contention.  First, the plaintiff asserts that the push tax is not an amusement tax because it is included in the portion of the City ordinances related to video game licensing (Waukegan Code, § 3-95), and not in the portion of the Code entitled "Amusements" and related to automatic amusement machines (*id.* § 14-111 *et seq.*).  The plaintiff argues that, taken together, these code provisions show that, in the City, VGTs and amusements are mutually exclusive and that the push tax cannot be considered an amusement tax.  This argument is unpersuasive.  The plaintiff is essentially asserting that the push tax cannot be considered an "amusement" tax within

the City's code because it is not within the "Amusements" section. However, the plaintiff fails to provide any argument as to why the push tax cannot be considered an "amusement tax" on persons who play on VGTs within the meaning of section 90(d) of the Gaming Act (230 ILCS 40/90(d) (West 2022)).

¶ 24    Second, the plaintiff argues that the circuit court decision in Cook County Case No. 20-CH-2928 raised a fair question that the Push Tax Ordinance was preempted by section 90(d) of the Gaming Act (*id.*). However, we agree with the trial court's finding in this case that the Cook County case is distinguishable as the push tax at issue in that case was levied directly on the terminal operators. In the present case, the City's ordinance levies the tax "upon any person who participates in the playing of [VGTs]." As such, the Cook County case also does not raise a fair question that the push tax does not fall within the meaning of section 90(d) of the Gaming Act. Accordingly, the plaintiff's first contention on appeal fails to establish any error in the trial court's denial of the TRO.

¶ 25    The plaintiff next argues that it raised a fair question that the Push Tax Ordinance was unconstitutional because the word "play," within the ordinance's requirement to pay a push tax in the amount of "one cent per play," is unconstitutionally vague. See Waukegan Code, §3-95(a). The plaintiff cites a case for the general proposition that a law is void if people of common intelligence must guess at its meaning. However, the plaintiff raises no meaningful argument or authority in its memorandum to support that the word "play" within the Push Tax ordinance is vague. If a party does not offer any argument or meaningful authority in support of an argument, the argument is forfeited. Ill. S. Ct. R. 341(h)(7); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶56. The appellate court is "not a depository in which

the burden of argument and research may be dumped." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80.

¶ 26    Moreover, even if we were to look to the plaintiff's complaint, its amended emergency motion for a TRO, and its argument at the hearing to determine whether it raised a fair question that the Push Tax Ordinance was unconstitutionally vague, we would reach the same result.  In the proceedings below, the plaintiff asserted that the word "play" in section 3-95(a) of the Push Tax Ordinance was vague because it was unclear whether, in addition to "primary plays," it would also apply to "free or bonus plays" or to pushes related to a "hold, raise, call, hit, fold, or exchange." In so arguing, the plaintiff implicitly admitted that it would apply to "primary plays" and, therefore, that the ordinance is capable of at least one valid application and presumptively constitutional. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 442 (2006) (statute normally not unconstitutionally vague if it is capable of any valid application).  While we make no determination as to whether the plaintiff will ultimately prevail on its claim that the Push Tax Ordinance is unconstitutionally vague, we hold that the trial court did not abuse its discretion in finding that the plaintiff failed to carry its burden of raising a fair question as to that issue for the purposes of denying the TRO.

¶ 27    Finally, the plaintiff argues that the trial court erred in finding that it needed more evidence to determine whether it would suffer irreparable injury, whether there was an adequate remedy at law, and who the balancing of hardships would favor.  However, because the plaintiff failed to establish that the trial court erred in finding that the plaintiff failed to raise a fair question as to the likelihood of success on the merits, we need not address these arguments.  *Yellow Cab*, 92 Ill. App. 3d at 356 (the failure to establish a fair question as to the likelihood of success on the merits is a sufficient basis to deny a request for a TRO).

¶ 28                                    III. CONCLUSION

¶ 29    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 30    Affirmed.