2024 IL App (2d) 240583-U
No. 2-24-0583
Order filed October 11, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TIMOTHY SOMEN and KATHRYN SOMEN, as parents and Next Friends of T.S., | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 24-CH-80 |
| AMATEUR HOCKEY ASSOCIATION OF ILLINOIS, INC., | ) ) ) | Honorable David R. Gervais, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court abused its discretion in granting plaintiffs' second emergency motion for a temporary restraining order barring amateur hockey association from enforcing its eligibility rules against their son where plaintiffs failed to establish irreparable harm in the absence of an injunction.

¶ 2    Defendant, Amateur Hockey Association of Illinois, Inc. (AHAI), appeals from an order of the circuit court of McHenry County entering a temporary restraining order (TRO) enjoining AHAI from enforcing its eligibility rules against T.S., the son of plaintiffs, Timothy Somen and

Kathryn Somen. This expedited appeal is brought pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Parties

¶ 5      AHAI is a voluntary association which regulates amateur youth hockey in Illinois. AHAI has promulgated rules and regulations that apply to the hockey programs it oversees. See 2024-25 AHAI Rules & Regulations, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024).

¶ 6      T.S. is a youth hockey player and a high school senior. T.S. resides in Algonquin, Illinois, with plaintiffs, his parents. Plaintiffs' residence is within the school district boundaries of Harry D. Jacobs High School (Jacobs), a public school. However, T.S. attends a private school, Marian Central Catholic High School (Marian).

¶ 7                                    B. AHAI Hockey Programs

¶ 8      AHAI-affiliated hockey clubs offer different programs based on a player's age, gender, and skill level, all of which operate under AHAI's rules and regulations. See 2024-25 AHAI Rules & Regulations, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). These hockey clubs include Tier I teams, Tier II teams, and high-school teams. 2024-25 AHAI Rules & Regulations, Articles 16, 18, 19, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). There are two playing "seasons," fall/regular season and spring/summer season. 2024-25 AHAI Rules & Regulations, §§ 5.1, 9.1, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024).

¶ 9 AHAI-affiliated high-school teams are available to students in grades 9 through 12 and follow the Illinois High School Association (IHSA) high school fall sports season. 2024-25 AHAI Rules & Regulations, §§ 19.1, 19.2, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). High-school teams are categorized as either "pure" or "combined." 2024-25 AHAI Rules & Regulations, § 19.4, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). A "pure" high-school team is comprised of players attending one high school. 2024-25 AHAI Rules & Regulations, § 19.4.1, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). A "combined" high school team is comprised of players attending two or more high schools. 2024-25 AHAI Rules & Regulations, § 19.4.2, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024). Further, section 19.2.4 of AHAI's rules and regulations provides as follows:

> "Home Schooled and Online High School student requirements for participation in a High School Affiliate Organization, either pure or combined, will require proof of enrollment in an accredited High School program as well as proof of residency within the public-school boundary based on their home address. This only applies to public schools with defined borders. Private Schools do not have defined boundaries and therefore are not considered to be home schooling or online education." 2024-25 AHAI Rules & Regulations, § 19.2.4, https://www.ahai.org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024).

Thus, students who are home schooled are treated as students of the public high school in whose boundaries they reside. AHAI's rules and regulations additionally state that "combined" high-school teams with students from more than six schools are ineligible to play in the state

championship tournament. 2024-25 AHAI Rules & Regulations, § 13.6.2, https://www.ahai. org/page/show/6335118-by-laws-rules-and-regulations-policies (last visited Oct. 10, 2024).

¶ 10                                    C. T.S.'s Hockey Play

¶ 11    Marian does not have a hockey program. Prior to spring 2024, T.S. played hockey with a variety of clubs, including an AHAI-affiliated Tier II club, the West Dundee Leafs. However, during the 2023-24 school year, several of T.S.'s friends (who attend different high schools) stopped playing with the Leafs and began playing with the Kings. The Kings is an AHAI-affiliated "combined" high-school team. The Kings fields students from six different high schools: Jacobs, Huntley, Hampshire, McHenry, Woodstock, and Woodstock North.

¶ 12    T.S. wanted to follow his friends to the Kings. Thus, on March 19, 2024, T.S.'s father emailed AHAI as follows:

> "My son is a long time Leafs club player having played midget prospects last year. Many of his friends and teammates are trying out for the next 3 days for the Kings spring program and my son would like to tryout and skate as well. Unfortunately, I spoke with the coach and he advised that my son cannot skate since he attends Marian *** and it not [*sic*] a 'member' school.
>
> I've reviewed the AHAI and IHSA rules in detail and see no provision that expressly prohibits my son from skating with the Kings. Moreover, and specifically, we reside in Algonquin, Illinois and are tax payers in the D300 District—if we did not elect to send our son to Marian, he'd be enrolled at Jacobs High School. Jacobs, of course, is a Kings member school. We also personally know people from Marian in the past few years that have skated with Kings. The bottom line is my son is high school hockey homeless as Marian does not have a team. As taxpayers in the District and with a student that would

otherwise by law be required to go to Jacobs (in District), I see no reason that my son should be discriminated against and not be able to play hockey because he goes to a catholic [*sic*] school with no hockey team. Again, the rules simply do not address the issue—I believe that's because there is *not* an issue. Plain and simple, he's in District for Jacobs (D300) and we pay taxes that go to that district and school. The fact that we choose to send our son to Marian should have, and I believe does not, zero impact [*sic*] on his ability to participate and play on the Kings team should he make the team." (Emphasis in original.)

On the same date, T.S.'s father emailed the liaison for the Illinois High School Hockey League, North Central Division, writing:

"Our son would like to tryout and skate with his friends from his Leafs midget *** prospects team that are trying out for [the] Kings. I see no reason why he cannot do so. However, I'm told he cannot take the ice without 'approval' to do so.

***

It may not be much of importance to AHAI, but it's very important to our son and family. We're effectively high school hockey 'homeless' as Marian has no hockey team and he cannot skate with the Kings district team in the very district in which we live and pay taxes for."

In response to T.S.'s father's emails, Bob Wagner, AHAI's representative, advised:

"[T]he unfortunate answer is no he cannot play for a program that does not include your specific school. This is [high school] hockey not club[.] [W]e simply can't allow anyone to play for [high school] programs[.] [B]ased on your reasoning our 3 Chicago teams would have 5-10 schools per program. That simply doesn't represent [high school] hockey."

Despite the foregoing exchanges, T.S. skated with the Kings for the spring 2024 season.

¶ 13    The Leafs team fall season tryouts took place from August 15-17, 2024. T.S. tried out for the Leafs. T.S. did not make the Leafs' first team, but was instead placed on the Leafs' second team for the 2024-25 season. On August 19, 2024, T.S.'s father petitioned AHAI to allow T.S. to join the Kings for the fall 2024-25 season. In response, AHAI wrote:

> "As was explained to you in March and as told to the Kings head coach over the weekend your son can't play for the Kings Hockey Club the fall [*sic*]. Your son goes to a private school that isn't part of a high school combination so there are no High School opportunities for him at this time. There are multiple opportunities for club midget hockey available for you to choose from."

¶ 14                        D. The First TRO Order

¶ 15    On August 21, 2024, plaintiffs filed a "Verified Complaint for Declaratory and Injunctive Relief" and an "Emergency Motion for Temporary Restraining Order and for Injunctive Relief" See 735 ILCS 5/11-101 (West 2022). Regarding the latter filing, plaintiffs argued that the situation presented an emergency because tryouts for the Kings had already begun and were scheduled to conclude on August 23, 2024. Plaintiffs alleged if the matter is not heard on an emergency basis, T.S. will be unable to register and be rostered on a Kings team and "his final opportunity to play high school hockey as a senior high school student will forever be foreclosed." Plaintiffs further alleged that T.S. has a "clearly ascertainable right to participate in high school hockey in Illinois as a prospective player for the KINGS hockey club." Plaintiffs urged that unless AHAI is enjoined and restrained from enforcing T.S.'s purported ineligibility to play high school hockey for the Kings, they will suffer irreparable harm in that T.S. will lose out on his ability to play high school hockey for his final year of eligibility as a senior high school student. Plaintiffs stated that there is a strong likelihood of ultimate success because AHAI previously permitted T.S. to play hockey as

a rostered player for the Kings and "has unilaterally and erroneously declared that T.S. cannot play for his final high school hockey season based upon an inconsistent, unreasonable, arbitrary and capricious interpretation of its expressed [rules and regulations] and stated intent thereof based upon nothing more than supposition, speculation and conjecture." Finally, plaintiffs asserted that they have no adequate remedy at law. Plaintiffs requested a TRO restraining AHAI from enforcing T.S.'s ineligibility from Kings hockey.

¶ 16    On August 22, 2024, AHAI filed a response to the emergency motion. AHAI's argument was twofold. First, AHAI contended that plaintiffs cannot recover because a necessary party—the Kings—had not been joined. Second, AHAI posited that plaintiffs cannot demonstrate a *prima facie* case for an injunction. With respect to the second argument, AHAI first maintained that participation in a voluntary interscholastic athletic association such as AHAI is not an intrinsic, ascertainable right in need of protection. AHAI also claimed that T.S. will not suffer irreparable harm because T.S. has other options, such as playing "club hockey" (as opposed to high school hockey). Next, AHAI argued that plaintiffs do not have a likelihood of success on the merits because T.S. has no legal right to participate in AHAI or the Kings. AHAI asserted that, even if plaintiffs could establish a legal interest and a justiciable controversy, the court could not overturn the decision of a voluntary association made pursuant to its rules absent a showing of fraud, collusion, or bias.

¶ 17    Following a hearing on August 23, 2024, the trial court granted plaintiffs' emergency motion for a TRO. Initially, the trial court found the matter to constitute an emergency "based on the timing." The trial court then addressed the elements for a TRO. The court acknowledged that the existence of a right in need of protection was a "close call," but found that such a right existed. The court explained:

"This is something involving someone who wants to engage in a high school athletic sport, and in certain situations I think it's more likely that that would be an ascertainable right needing protection. It is questionable here based on this being a private, essentially a club with *** [AHAI]. However, I believe there is a sufficient interest there that deserves protection in any event."

Additionally, the trial court found that T.S. would suffer irreparable harm in the absence of an injunction, stating "this young high school student cannot [*sic*] be able to play hockey and that would be harmful." Next, the court found no adequate remedy at law. Finally, the court stated that, "for the purpose of this [TRO], I think there is [a] likelihood of success [on the merits]." The court further elaborated:

"I got a young man who was previously allowed to play for the Kings hockey team, and I think there's been detrimental reliance on that right to where he's foregone other opportunities to seek, establishing another club or doing anything else based on his right to play previously for the Kings. ***.

What's harder for me, I think, to stomach is stating that if I have a student who is being home schooled, that's allowed, that's okay. You're home schooled, you could then be a part of this [*sic*] six schools. Just because you go to a private high school instead of home school, they're meant to rule you out. Once again, I got someone who relied on that."

The TRO "temporarily restrained [AHAI] from, directly or indirectly, ruling [T.S.] ineligible to be rostered as an approved youth hockey player" for the Kings.

¶ 18    Prior to concluding the hearing on the TRO, the court acknowledged that AHAI had a "valid point" that "possibly the wrong party is being sued in this." The court stated that it was not making any ruling related to the Kings because T.S. "ha[s] to qualify through tryouts and there

were no tryouts regarding this session *** [a]nd I don't know what the Kings are going to do." Plaintiffs agreed that the Kings "are not before the Court" and that they were not "adjudicating or seeking an adjudication of any rights relative to the Kings' organization."

¶ 19    After entry of the TRO, T.S. tried out for the Kings and was selected and rostered on that team. On September 4, 2024, AHAI authored a letter directed to the Kings' players and their parents informing them that because the Kings added a player from a seventh school (Marian) to its roster, the team no longer qualifies for the state high school championship tournament. On September 6, 2024, plaintiffs filed a petition for rule to show cause. Plaintiffs alleged that AHAI's letter constituted a violation of the TRO.

¶ 20    Also on September 6, 2024, the Leafs sent an email to plaintiffs. In the email, the Leafs noted that T.S. tried out for the team in August and was offered a roster spot. The Leafs further noted that the team has been holding the spot for T.S. and "will continue to hold [T.S.'s] spot until [the team] hear[s] from [plaintiffs]."

¶ 21    On September 9, 2024, the trial court commenced a preliminary injunction hearing. During that hearing, the trial court again addressed, but did not rule on, the issue of whether the Kings were a necessary party. Plaintiffs presented one witness, Brian Knight, the president of the Kings. AHAI presented one witness, Jack Weinberg, a member of AHAI's board of directors and the former chairperson of AHAI's high school committee. However, Weinberg did not complete his testimony. The trial court continued the TRO until September 30, 2024, the date scheduled to conclude Weinberg's testimony.

¶ 22    On September 12, 2024, the trial court entered a *sua sponte* order finding the Kings were "now a necessary party to this cause and controversy." The court directed the circuit court clerk and sheriff to issue and serve a summons on the Kings. The trial court set a return date of October

25, 2024, for the Kings, extended the TRO to October 26, 2024, for good cause shown, and continued the matter until November 25, 2024, for setting of future dates. AHAI received that order on September 17, 2024.

¶ 23 On September 19, 2024, AHAI moved the trial court to reconsider its September 12 order and to dissolve the existing TRO. At a hearing on September 23, 2024, the trial court acknowledged that the TRO was likely void because it had been entered without the presence of a necessary party, *i.e.*, the Kings, but invited plaintiffs to file a new motion for TRO. The trial court continued AHAI's motion to September 30, 2024.

¶ 24                                   E. The Second TRO Order

¶ 25 On September 27, 2024, plaintiffs filed a second "emergency" motion for TRO and injunctive relief. The Kings were listed as a "necessary party" on the motion. The bases asserted in the second motion and the requested relief were substantially identical to those in the first motion for TRO. On September 30, 2024, AHAI filed a response to the second "emergency" motion.

¶ 26 At a hearing on September 30, 2024, the trial court found that its August 23, 2024, TRO was void because it did not name the Kings as a party. Over AHAI's objections, the trial court granted plaintiffs' second emergency motion for TRO and re-entered the same relief as in the first motion for TRO. The court reasoned as follows:

> "I would like to explain the reason for me to issue a new TRO is because we're dealing
> with a pending petition for rule to show cause relating to a violation where the Kings were
> contacted. That happened after the issuance of the first TRO. So we have a new set of facts
> that is different from the first TRO, and we do have the urgency because the TRO that was
> in existence, like we'll just call it void. I'm declaring it void, even though that will be raised
> in your response to the petition for rule to show cause.

So, I'm left with the situation that is very similar to when I first ruled on this. But when I made a ruling, and when the miss [*sic*] of a preliminary injunction hearing to establish factual basis beyond the pleadings, that's still unresolved. But the same facts that I've ruled on when I granted the initial now voided [TRO] still exists and they're laid out in the findings that [plaintiffs] put in [their] first [TRO] which is clearly ascertainable right to protection and irreparable injury, no remedy at law[,] likelihood of success. And based on those reasons, I am issuing this new [TRO]."

AHAI asked for clarification regarding the court's finding of an ascertainable right with respect to the TRO. The court responded:

"It's *prime facie* case. First of all, if they establish the *prima facie* case, that's all they need to do at this level. But essentially we have a situation where someone was permitted to play on the Kings in the spring session and there's reliance on that and then that person now they're saying in the fall section, that person can't play and that raises— that's part of the potential. I'm unsure what [plaintiffs are] going to bring up during our hearing in the preliminary injunction. But that alone for me is sufficient to allow this to have an emergency order entered."

Thereafter, AHAI filed this appeal and a memorandum in support thereof pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). Plaintiffs timely filed a responding memorandum.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, AHAI argues that the trial court erred in granting the second TRO. A TRO is a drastic remedy that should only be granted in exceptional circumstances and for a brief duration. *Abbinanti v. Presence Central & Suburban Hospital Network*, 2021 IL App (2d) 210763, ¶ 14. The purpose of a TRO is to allow the trial court to preserve the *status quo* until it can hold a hearing

to determine whether it should grant a preliminary injunction. *Delgado v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 481, 483 (2007).

¶ 29    A party seeking a preliminary injunction or a TRO must demonstrate that there is a "fair question" as to each of the following: (1) a clear right in need of protection, (2) irreparable harm in the absence of an injunction, (3) no adequate remedy at law. and (4) a likelihood of success on the merits. *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 22; *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The failure to establish any one of these elements is a sufficient basis to deny a request for a TRO. *Yellow Cab Co. v. Production Workers Union of Chicago & Vicinity, Local 707*, 92 Ill. App. 3d 355, 356 (1980). If a movant establishes all four of these elements, the trial court may then consider whether the balance of harms favors the grant or denial of injunctive relief. *Bridgeview Bank Group v. Meyer*, 2016 IL App (1st) 160042, ¶ 12. We review the grant or denial of injunctive relief such as a TRO for an abuse of discretion. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 541 (1983); *Schroeder Murchie Laya Associates, Ltd. v. 100 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1092 (2001). An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or if no reasonable person would agree with the position adopted by the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 108.

¶ 30    AHAI argues that the trial court erred in granting the second TRO because plaintiffs do not have an ascertainable right in need of protection, plaintiffs will not suffer irreparable harm in the absence of an injunction, and plaintiffs will not prevail on the merits of their claim. We agree that T.S. will not suffer irreparable harm in the absence of an injunction. We reverse on that basis.

¶ 31    During the August 23, 2024, hearing on the motion for the first TRO, the court stated that it found irreparable harm because "this young high school student cannot [*sic*] be able to play hockey and that would be harmful." The court further explained:

> "I got a young man who was previously allowed to play for the Kings hockey team, and I think there's been detrimental reliance on that right to where *he's foregone other opportunities to seek, establishing another club or doing anything else* based on his right to play previously for the Kings." (Emphasis added.)

At the September 30, 2024, hearing, the court stated that it was relying on the "same facts" to enter the second TRO. But the record establishes that in August 2024, T.S. tried out for and secured a spot on the Leafs. Moreover, as noted in the Leafs' email to plaintiffs, the team was continuing to hold a roster spot for T.S. Thus, contrary to the trial court's statements, T.S. did *not* forego other opportunities and he *would* be able to play hockey for the 2024-25 season.

¶ 32    In their responding memorandum, plaintiffs insist that T.S. will suffer irreparable harm if the TRO is vacated in that "T.S. will be summarily stripped off the Kings team and roster, lose out on developed and developing relationships with teammate [*sic*] and coaches and never be able to play high school hockey in the State of Illinois." Plaintiffs, however, fail to explain any distinction between playing high school hockey with the Kings and playing club hockey with the Leafs. Moreover, T.S. will undoubtedly have the opportunity to develop relationships with teammates and coaches regardless of the team on which he plays. Based on the record before us, we therefore conclude that the trial court abused its discretion in entering the TRO because plaintiffs failed to establish irreparable harm in the absence of an injunction. Since the failure to establish any one element is a sufficient basis to deny a request for a TRO, we need not address the remaining elements. See *Yellow Cab Co.*, 92 Ill. App. 3d at 356.

¶ 33                             III. CONCLUSION

¶ 34    For the reasons set forth above, we reverse the judgment of the circuit court of McHenry County, dissolve the TRO, and remand for further proceedings consistent with this order.

¶ 35    Reversed and remanded.